KIMBRO *v.* WELLS.

Opinion delivered November 15, 1915.

DAMAGES—BREACH OF CONTRACT—STIPULATION FOR LIQUIDATED DAMAGES.— Defendant sold his mill and lumber business, agreeing not to re-enter that business in a certain town, and the agreement stipulated damages at $2.50 per day so long as defendant continued in the business. *Held,* the evidence was sufficient to warrant a finding that defendant had violated his agreement, and a verdict awarding damages in accordance with the stipulation will be upheld.

Appeal from Drew Circuit Court; *Jas. C. Knox,* Special Judge; affirmed.

*Henry & Harris,* for appellant.

1.   On the former appeal this court approved as correct an instruction to the effect that if the plaintiff purchased of defendant his entire planing mill outfit and lumber on hand, entered into a written contract as to the entire transaction and thereafter, without any new or additional consideration, the defendant signed the obligation sued on, such obligation was void, and defendant was entitled to a verdict.   112 Ark. 126.   This declaration of law is controlling, and the court ought to have directed a verdict for appellant at the close of appellee's testimony.

The testimony of Wells that it had been agreed before the first contract was signed that Kimbro would go out of business was not competent, for the law presumes that everything agreed upon was embraced in the written contract.   21 Ark. 69.   There was no present consideration for the additional or second contract, and a past consideration will not support it.   21 Ark. 18; Lawson on Contracts, 119.

2.   There was no violation of the contract sued on. The purpose of the sale as appears by the testimony, was to get appellant's lumber yard out of the way, and the sale by appellant of lumber which was at his mill without the limits of the town was not a violation of the contract. The subject of the contract was a lumber yard, and it specifically provided that appellant should not establish a lumber yard within the limits of the town of Monticello, this specific provision being followed by the general provision that he should not otherwise become interested in the sale of lumber at Monticello.   The sole purpose of this latter clause was to provide against appellant's becoming interested in a lumber yard and to prevent him from keeping a stock of lumber at Monticello for sale in competition with appellee.   15 Cyc. 247; 9 Cyc. 70, note 4; 101 Ark. 596; 111 Ark. 54; 61 Ark. 502, dissenting opinion.

In construing the contract, the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties should be considered, and the sense in which, taking these things into consider-

ation, the words used would be commonly understood. 105 Ark. 421. The conduct of the parties should be considered. 17 Cyc. 669.

3. The verdict is excessive. The court's instructions on the measure of damages were erroneous. While the contract placed the measure of damages at $2.50 per day for *each day* of its violation, yet the burden of proving each day's violation was upon the appellee.

*Williamson & Williamson,* for appellee.

1. The contract sued on was not without consideration nor void. The opinion on former appeal clearly holds that the consideration as claimed by Wells was valid and sufficient, and that the contract as claimed by him was not void. 112 Ark. 132.

The question as to whether or not there were two contracts is settled adversely to appellant by the testimony adduced at the second trial, and the verdict of the jury thereon. The alleged ''second'' contract does not ''show on its face that it was executed subsequent to the execution of the contract of sale of lumber business. On the contrary it specifically states that it is ''a part of the contract of sale, * * * this day made.'' The two having been written before either was signed, fastened together with cross-references the one to the other, and the jury having accepted Wells' testimony as to how they were signed and rejected Kimbro's statement, who is there to say which instrument Kimbro signed first? 60 Am. St. Rep. 96, note; 55 *Id.* 653, and note, at p. 659; 83 *Id.* 138, and note at p. 141; 6 R. C. L., § 240; 89 Ark. 239.

Appellee met the burden of proving a consideration by showing that that part of the contract on which he bases his cause of action was a part of the original contract, by proving to the jury's satisfaction that there was but one contract, not two. Appellant insists that the burden was on appellee to prove a separate consideration for this one part of the entire contract. That is not the law. 112 Ark. 126; 24 Ark. 197-201; 48 Ark. 413-415; 28 Ark. 387-390; 119 N. C. 1, 56 Am. St. Rep. 650.

2. The evidence in the case was adjudged sufficient to uphold the verdict of the jury by the decision of the court on the former appeal. 112 Ark. 133-134. This is the law of the case and fully answers appellant's contention that "the contract sued on has never been violated."

3. The verdict is not excessive, but on the contrary it is manifestly inadequate, and this court ought, on appellee's cross-appeal, award to him judgment for the full amount sued for. He is entitled to all that his contract calls for. If the evidence shows any liability at all, it shows a liability for three years' continuous violation, and appellee is entitled to judgment for $2.50 per day for every business day for three years next before the filing of the suit. 4 Am. St. Rep. 239; 177 S. W. (Ark.) 35; Ann. Cas. 1912D, p. 588; 68 Ark. 444-446. See, also, 70 Ark. 385; 34 Ark. 632; 33 Ark. 751; 28 Ark. 550; 26 Ark. 309; 24 Ark. 224; 22 Ark. 54; 21 Ark. 468; 20 Ark. 443; 15 Ark. 540; 13 Ark. 71; 10 Ark. 309; 8 Ark. 155; 7 Ark. 462; 8 Am. & Eng. Ann. Cas. 904; note on inadequacy of verdict.

HART, J. This is the second appeal in this case. The opinion on the former appeal is reported in 112 Ark. 126, under the style of Kimbro v. Wells. A brief recapitulation of the issues involved in the former appeal will serve to make plain the issues involved in the present appeal. George Wells and J. S. Kimbro each owned and operated a planing mill and lumber yard in the town of Monticello, Arkansas, and on the 29th day of July, 1908, they entered into a written contract whereby Wells purchased the planing mill and lumber yard of Kimbro. Attached to the contract, but on a separate piece of paper, was the following:

"As a supplement to and a part of the contract of sale of my planing mill outfit and lumber to George Wells, this day made by me, it is agreed, contracted and understood that I shall not hereafter establish a lumber yard within the corporate limits of Monticello, Arkansas, nor otherwise become interested in the sale of lumber at Monticello, Arkansas, in competition with said George Wells;

and in case I should break this contract, then I promise and agree to pay to said George Wells, or his order, the sum of two and one-half dollars per day as liquidated damages for each and every day I so engage in or become interested in the sale of lumber in Monticello, either in person or by agent. July 29, 1908.

        (Signed)   "J. S. Kimbro."

On the 26th day of October, 1912, Wells sued Kimbro to recover damages for an alleged breach of this contract. It was the contention of Wells that the two instruments were in legal contemplation one contract. On the other hand, it was the contention of Kimbro that the first instrument embraced all matters relating to the sale of the business that had been agreed upon by them up to the time of its execution and that the matters contained in the second instrument were not the subject of negotiations between them until after the first instrument had been signed and delivered.

The circuit court excluded the testimony of the defendant to prove this on the ground that it tended to vary or contradict the written instrument. This court held that the excluded testimony did not tend to contradict or vary the terms of the written contract, but tended to show that the two instruments were not executed at the same time, but were distinct and separate agreements; and that if the testimony of Kimbro was true, there was no consideration for the second instrument. For the error of the circuit court in excluding the testimony just indicated the judgment was reversed and the cause remanded for a new trial.

On the retrial of the case Wells testified that he and Kimbro each owned and operated a planing mill and lumber yard in the town of Monticello; that the town was too small for two firms to engage in that business; that they entered into negotiations which terminated in Wells buying out the business and good will of Kimbro and a written contract was entered into between them; that as a part of the contract it was agreed that Kimbro should not again open up a planing mill and lumber yard in the town

of Monticello, and should not engage in the sale of lumber therein in competition with him; that this feature of the contract was left out of the first instrument drawn up, but was embodied in another instrument which was signed just after the first instrument was signed, and that the two instruments constituted one contract; and that subsequently Kimbro opened up an office in the town of Monticello and began to sell lumber and shingles in competition with him.

Several contractors and builders were introduced as witnesses by Wells and each of them testified that he had bought numerous bills of lumber from Kimbro in the town of Monticello and had paid him therefor in said town. One of the witnesses said that Kimbro did not open an office for the sale of lumber after he executed the contract until about the middle of the year 1911; another witness testified that in 1912 Kimbro advertised his lumber business in one of the local papers. Others of the witnesses testified that they bought shingles and small bills of lumber from Kimbro in the town of Monticello, but the testimony shows that most of the lumber sold by him was brought in from his mill situated in the country some distance from the town.

Kimbro testified that the first instrument contained everything which had been agreed upon between them up to that time; that some time after the first agreement had been signed, but on the same day, Wells told him that he ought to give him a contract not to run a lumber yard in the town of Monticello, and that he told Wells he did not want to run a lumber yard in there, and that an agreement was then drawn up to that effect, which he signed; that it was not a part of the first contract; and that there was no consideration whatever for it.

Kimbro further testified that since signing the instrument he had not operated a lumber yard or otherwise engaged in the sale of lumber in the town of Monticello; that for two or three or four years after the contract was signed, he did not have an office in the town of Monticello; that he then opened up an office in the town and sold lumber to different people from his mill in the coun-

try; and that he had never sold any lumber except at his mill.

The jury returned a verdict in favor of Wells for $750 and from the judgment rendered Kimbro has prosecuted this appeal.

As we have already seen, the main dispute between the parties was whether or not the two instruments were prepared and executed at the same time, and, in law, should be considered as one contract; or, whether they were separate and distinct contracts with no consideration for the latter, copied in the statement of facts.

This disputed question was submitted to the jury under proper instructions, and no useful purpose could be served by setting out the instructions as given by the court or by commenting upon them at length. It is evident from reading the instructions that the court submitted the disputed question according to the law laid down in the opinion on the former appeal; and what we said on the former appeal became the law of the case and governed on the retrial of the issues.

It is next contended by counsel for the plaintiff that the verdict is excessive. It will be noted that the contract contains a provision whereby Kimbro agreed to pay Wells the sum of $2.50 per day as liquidated damages for each day he engaged in or became interested in the sale of lumber in Monticello. On the former appeal we said it was impossible for the parties to foresee the amount or extent of the injury which might be sustained by Wells should Kimbro again open up a lumber yard in the town of Monticello, but that they could foresee, however, that this would seriously affect the business of Wells, and that the amount agreed upon as liquidated damages was not so unreasonable that it should be considered a penalty. The language of the instrument was that Kimbro should not again engage in or become interested in the sale of lumber in Monticello. Under this agreement it was not necessary to entitle Wells to recover, to show that Kimbro made sales of lumber every day; it was only necessary for him to show that Kimbro was engaged in or interested

in the sale of lumber, that is to say, held himself out as being ready to sell lumber.

This suit was instituted on the 26th day of October, 1912. The jury may have found from the testimony introduced by Wells that Kimbro at least opened up an office for the sale of lumber about the middle of 1911, and continued to conduct said business until this suit was instituted. During a part of this time his business was advertised in a local newspaper. Therefore, we are of the opinion that there was sufficient evidence to warrant the verdict.

The plaintiff has taken a cross-appeal and insists that if he was entitled to recover anything he was entitled to recover more than he has recovered; in other words, he contends that if he was entitled to recover anything at all he was, under the undisputed evidence, entitled to recover more than the amount of the verdict of the jury. He contends that the undisputed evidence shows that Kimbro opened up an office for the sale of lumber in the town of Monticello three years before the suit was instituted and kept that office open for the sale of lumber in competition with him until the suit was instituted.

We do not agree with the contention of counsel for plaintiff in this respect. We are of the opinion that there was sufficient evidence to have warranted the jury in finding that to be a fact, but we do not think it can be said that this fact is established by the undisputed evidence. Some of the witnesses for the plaintiff placed the time at which Kimbro opened his office for the sale of lumber in the town of Monticello at about the middle of the year 1911. It will be remembered that the suit was instituted October 26, 1912. Moreover, Kimbro himself testified that his wife was ill when he entered into the contract with Wells, and that she required his attention to such an extent that he did not have any office in the town of Monticello for two or three or four years after his contract with Wells was entered into. This contract was entered into on the 29th day of July, 1908; so it will be seen that the jury might have found for a greater or a lesser amount than it did find.

The jury were the sole judges of the weight of the evidence and of the credibility of the witnesses. They had a right to believe all or only a part of the testimony of any witness. It was their duty to accept such part as they believed to be true and to reject that part which they believed to be false. In the exercise of this right it can not be said that if the jury found for the plaintiff in any amount they must necessarily have found for a greater amount than the verdict. Under the testimony of Kimbro they might have believed that he did not open up an office until four years after the contract of July 29, 1908, was entered into and this would place the time when he began to violate the contract about the middle of July, 1912; or, the jury could have found that he opened up an office for the sale of lumber one year, or any other period of time less or more than that, after the execution of the contract.

The judgment will be affirmed.

WOOD, J., disqualified.