O. K. TRANSFER & STORAGE COMPANY *v.* CRABTREE.

Opinion delivered February 26, 1923.

1.  GOOD WILL—AGREEMENT NOT TO RE-ENGAGE IN BUSINESS.—A stockholder selling his stock to the corporation may make a valid agreement with it not to engage in the same business again in the same city.

2.  GOOD WILL—AGREEMENT NOT TO RE-ENGAGE IN BUSINESS—CONSIDERATION.—Where a contract for the sale of stock to the corporation which issued it was made, and the stock and notes therefor were delivered, before anything was said to the seller about agreeing not to re-engage in the same business in the same city, such an agreement subsequently entered into without consideration was invalid and unenforceable by the corporation or its assignee.

3.  EVIDENCE—PAROL EVIDENCE AS TO SEPARATE AGREEMENTS.—Parol evidence that a contract for the sale of stock to the corporation which issued it and an agreement by the seller not to re-engage in the same business in the same city were separate contracts, and that there was no consideration for the latter contract, was admissible in a suit to enforce the latter contract.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; affirmed.

STATEMENT OF FACTS.

O. K. Transfer & Storage Company, an Arkansas corporation, brought a suit in equity against J. W. Crabtree to enjoin him from conducting a storage and transfer business in the city of Fort Smith, Ark. Subsequently the codefendants of Crabtree were made parties to the suit by an amendment to the complaint.

In 1912 J. W. Crabtree was engaged in the general transfer business in the city of Fort Smith, Ark., under the name of the Merchants' Transfer Company, and consolidated his business with that of the Fort Smith Transfer Company. The Fort Smith Merchants' Transfer Company was duly organized to take charge of the business of the two concerns. One hundred and ninety shares of stock in the new corporation were issued to Crabtree in payment for his business. He was elected president of the new company and assumed the management of its af-

fairs. R. G. Moore was elected first vice-president and Ollie C. Moore was elected second vice-president.

On the 23rd day of June, 1914, J. W. Crabtree sold his stock and good will to the corporation for $9,000. He resigned as president, and R. G. Moore was selected to succeed him. The minutes of the Fort Smith Merchants' Transfer Company show that the directors met at 8:30 p. m. on June 23, 1914, in Fort Smith, Ark. J. W. Crabtree resigned as president, and then sold 190 shares of capital stock in said corporation and his good will to the corporation for the sum of $9,000, to be evidenced by notes of $200 each. Crabtree's stock was held as collateral by the Fort Smith Bank & Trust Company at the time the sale ws made, and the same was not delivered until the morning of June 24, 1914. On that morning R. G. Moore and J. W. Crabtree met at the bank. The stock was delivered to Moore and the notes executed by the corporation for the stock were delivered to the bank. This was in accordance with the terms of the agreement made on the previous evening. On the morning of the 24th day of June, 1914, J. W. Crabtree entered into written agreement with the Fort Smith Merchants' Transfer Company that he would not at any time thereafter directly or indirectly engage in conducting a transfer business in the city of Fort Smith, Ark.

This agreement also provided that Crabtree would at all times do everything in his power to promote the good will and prosperity of the business sold.

According to the testimony of J. W. Crabtree, this written agreement was presented to him after the contract for the sale of his stock in the corporation had been completed. The question of his not again entering into the transfer business in the city of Fort Smith was not mentioned until after said contract for the sale of his stock had been executed. Moore presented the contract to Crabtree at the bank, and, after some insistence, Crabtree signed the contract, but received no consideration for so doing. The contract was not spoken of until after

the sale of the stock by Crabtree had been completed. Crabtree's testimony is corroborated by that of Ollie C. Moore.

The agreement which Crabtree made with the Fort Smith Merchants' Transfer Company not to again engage in the transfer business in the city of Fort Smith was assigned by that company to the O. K. Transfer & Storage Company at the time the former corporation sold its property and assets to the latter corporation.

In September, 1921, J. W. Crabtree again engaged in the transfer business in the city of Fort Smith. After the Fort Smith Merchants' Transfer Company sold out to the O. K. Transfer & Storage Company, it surrendered its charter and the corporation was dissolved. On this account the plaintiff made all the stockholders in said corporation codefendants with J. W. Crabtree in the present suit.

The chancellor found the issues in favor of the defendants, and it was decreed that the complaint of the plaintiff should be dismissed for want of equity.

*W. L. Curtis* and *Cravens & Cravens,* for appellant.

The contract is assignable at the common law, and, the assignor being a necessary party, the company having gone out of business, it was proper to make the stockholders thereof parties.  97 Ark. 513; 47 Ark. 541; 80 Ark. 167; 120 Ark. 221.  We find no decisions of this court on the question whether or not such a contract as is involved here is assignable, but the weight of authority holds that it is assignable.  118 N. W. 166; 16 Am. & Eng. Ann. Cas. 259 and note; 47 Iowa 137; 67 Am. Dec. 511; 106 N. Y. 487; 13 N. E. 419; 95 N. Y. Supp. 1060; 57 Atl. 1025; 32 Md. 561; 3 Am. Rep. 164; 71 N. W. 654; 26 S. E. 71; 72 N. W. 757; 68 Am. St. Rep. 480; 62 So. 514; 66 S. E. 665.

*Warner, Hardin & Warner,* for appellees.

1.  There was no consideration for the contract relied upon by the appellant, and it is therefore void and unenforceable.  112 Ark. 126; 76 Ark. 140; 13 C. J. 359;

39 N. W. 255. Because Crabtree sold his stock and good will for a consideration, the law will not imply a promise on his part not to reengage in the same business. 148 Ark. 222.

2. The contract was strictly personal and not assignable. 64 Ark. 339; 67 Am. St. Rep. 357; 5 Corpus Juris 882, 883; 128 U. S. 246; 81 Atl. 163.

3. Assuming that the contract was valid, not intended to be strictly personal, and that it was, in fact, assigned to the plaintiff, was it, being in partial restraint of trade, assignable? See 67 Am. St. Rep. 357; 18 Am. Rep. 281. While this court, commencing with *Webster* v. *Williams,* 62 Ark. 101, upholding the validity of such contracts, if reasonable and founded upon a legal consideration, down to *Patterson* v. *Rogers,* 148 Ark. 22, has not passed directly on this question, yet it has throughout hedged these contracts about with limitations and restrictions not applicable to other contracts. And it has held that such contracts are valid only when they afford fair protection to the interests of the party in whose interests they are given and do not interfere with the interests of the public. 95 Ark. 449; 112 Ark. 126. See also 13 Corpus Juris 478.

Hart, J., (after stating the facts). This court has sustained as valid agreements by the vendor of a business, with or without limitations as to time, not to carry on the business within the limits of a certain city. *Bloom* v. *Home Insurance Agency,* 91 Ark. 367; *Hampton* v. *Caldwell,* 95 Ark. 387; *Kimbro* v. *Wells,* 112 Ark. 126; and *Kimbro* v. *Wells,* 121 Ark. 45.

Under this rule Crabtree might make a valid agreement with the purchaser of his stock not to engage in the same business again in the same city as the corporation which purchased his stock. Assuming (without deciding the question) that a contract in partial and reasonable restraint of trade, such as a covenant not to engage in a particular business within a designated territory, is as-

signable, still we do not think that the contract in question is valid under the particular facts and circumstances in this case as shown by the record.

According to the testimony of Crabtree, which is corroborated by that of Moore, he made and executed the contract for the sale of his stock to the corporation which issued it before he made or assigned the contract not to engage again in the transfer business in the city of Fort Smith. His sale of the stock was completed on the evening of June 23, 1914. This is shown by the minutes of the board of directors of the corporation held on that evening, and nothing is shown by any agreement on Crabtree's part not to again engage in the same business.

It is true that the stock was not delivered to the corporation or the notes of the corporation delivered to Crabtree until the next morning. This occurred, however, because the stock of Crabtree had been deposited in bank as collateral security. The stock was delivered to the corporation by Crabtree, and the notes of the corporation were delivered to Crabtree for the stock before anything was said to Crabtree about making an agreement not to engage again in the business. Crabtree at first declined to sign the agreement, but, upon the representative of the corporation insisting on it, he did sign it, but received no consideration for so doing. His testimony in this respect is corroborated by that of O. C. Moore.

Hence the chancellor was warranted in finding that the contract for the sale of the stock by Crabtree to the corporation and the contract by him with the corporation not to engage again in the transfer business in the city of Fort Smith were separate and distinct contracts, with no consideration for the latter.

It was competent to show by parol evidence that the two instruments were wholly independent and separate agreements, and that there was no consideration between the parties to support the agreement of Crabtree not to

again engage in the transfer business in the city of Fort Smith. *Kimbro* v. *Wells*, 112 Ark. 126, and *Kimbro* v. *Wells*, 121 Ark. 45.

The chancellor found the issues in this respect in favor of the defendant, Crabtree, and it cannot be said that his finding of fact is against the preponderance of the evidence.

It follows that the decree will be affirmed.