The Scott-Burr Stores Corporation *v.* Foster.

4-5263                                          122 S. W. 2d 165

Opinion delivered December 5, 1938.

Steve Carrigan, for appellant.

W. S. Atkins, for appellee.

BAKER, J. The Scott-Burr Stores Corporation was sued by Mrs. Ida Foster for personal injuries alleged to have been sustained on the 10th day of December, 1937. She was employed in the store or business house of the appellant in the city of Hope, Hempstead county, Arkansas. It was alleged that prior to the time of her injury she was strong and able-bodied, in good health, with steady nerves and that the injury she suffered had resulted in permanent physical disability to such an extent that she was then wholly incapacitated. She had worked as a saleslady in the mercantile business operated by the appellant as extra help for a period of approximately a year. She, no doubt, was possessed with that degree of familiarity with the store and fixtures, and surroundings as might have been expected of one so employed for the time. The business house of the appellant is described as a one-story building, facing south, in the rear or north end of which is an upper floor or decking, called a balcony, upon which is located an office department and storage places for goods, fixtures and furniture, or appliances not in actual use. This second floor or balcony is reached by a stairway, one side of which rests against the north wall of the building, perhaps about four or five feet wide. At the top of the stairway and to the side, away from the wall, there is a bannister, supported by uprights about four feet high. Boards are placed on top this bannister, reaching across or over the stairway so

that the end of the boards next to the wall rested upon a cleat or piece of timber fastened to the wall as a support for the boards, which when so placed constituted or made a shelf upon which numerous articles had been placed or stored. Among these articles there were chalk or plaster of paris statuettes, supports for goods placed in or under counters called shams. These shams were made of wood and cardboard and were employed when in use as temporary or false shelves under counters or on counters, or at such places as it was desired to make use of them, for the purpose of stacking or placing goods thereon.

At the time Mrs. Foster was hurt, she had been sent to this balcony floor to get some paper clips for use in tagging merchandise. Descending the stairway some objects that had been placed or piled upon this shelf over the stairway fell from it, struck her on the right side of the head, just above the ear, glanced off striking her shoulder and falling to the floor. It is probably not positively known whether the object which struck her was one of the shams, a loose board or one of the statuettes. Someone picked up from the floor shortly thereafter one or more of the shams. It is said that some of the statuettes also fell. The blow from which she suffered was not sufficient to knock her down, but she was so badly hurt that she stopped for a few minutes on the stairway to recover from the shock and then returned to the place where she had been working. She was sent out with another lady to a doctor's office for treatment of the rather severe wound on the side of her head. The doctor described the wound as being cut to the bone or periosteum. He treated the wound by sterilizing and by applying clips so as to draw the edges of the cut together. No treatment was given to the shoulder or arm at the time, but there was administered to her a shot in order to avoid the development of tetanus. She returned to her work and remained there until late in the afternoon when she was called away on account of the illness of her father, who died a day or two thereafter. On account of his illness and death she did not return to the store for about a week. At the time she returned her arm and

shoulder were very sore and somewhat swollen. She had with her some liniment or lotion which she applied or had rubbed on by one of her fellow employees. It is alleged that she grew worse, returned to her home where she was confined for several weks. Upon trial of this case she was awarded a verdict for $3,000. The appeal comes from the verdict and consequent judgment.

For her cause of action she alleges that the defendant did not use ordinary care to furnish her a reasonably safe place within which to work. In addition to a general denial the defendant pleaded assumption of risk.

Defendant insisted that the court should have directed a verdict in its favor for the reason that the evidence was not sufficient to show negligence. The defendant, also, urged that there was error in giving instructions Nos. 1, 2 and 5. It was also urged that the verdict was excessive.

Only because of the most earnest insistence on the part of the appellant that the evidence is not sufficient to show actionable negligence do we mention this matter at all. The appellant, however, argues that if there were objects so placed upon the shelving above the stairway that they fell therefrom, that fact in itself is not evidence of negligence without some showing that such objects had been so placed or located for a sufficient length of time that they must have been observed by the management of the store or that, in the exercise of ordinary care, a presumption arises that they could or should have been seen. We do not agree with this theory of the appellant. The evidence shows that this shelf is above the stairway, the only passageway by which one might go from one floor to the other, that if any object should fall from this shelf almost of necessity it must fall upon the stairway. There is no evidence of the insecurity of the stairway or bannister, or shelfing above it. So far as the evidence is concerned in that respect we must and do presume that the stairway was steady and that in the normal use of it there was nothing to loosen, disturb or shake objects placed upon the shelf so as to cause them to fall. This was a place, so far as the evidence shows, not open to public use, but resorted to only

by the employees of the company. When objects were placed upon this shelf over the stairway, if they were not so placed or stacked thereon that they would not fall from that particular location, then the servant or employee handling such articles must be deemed to have been negligent and if there was no rack, and the evidence does not show any, to prevent the falling of such articles carelessly or negligently placed at or near the edge of this shelf, then there should have been such constant inspection as ordinary prudence would require to maintain at least reasonable safety. We think the jury might well have found that if those who used the stairway, or those who placed or stored or stacked articles upon this overhead shelving had exercised ordinary care in so doing there would have been a practical impossibility for objects to fall therefrom. It is not necessary to point out, or even to know or suspect what particular servant or agent may have been negligent. It was within reasonable requirements of the defendant company that it exercise ordinary care to keep this place reasonable safe for those who must in the performance of their duties use the stairway. The insistence, on the part of the appellant, that there is no evidence from which it could be assumed or inferred that the particular shams that fell from the open shelf above the stairway had been in the dangerous position or ready to fall for any length of time before they actually fell upon the appellee is not tenable as a defense. If we assume that the articles that fell had been so placed, that they were in danger of falling, by some employees of the company only a moment before they did fall, then that act of so placing them was an act of negligence and the length of time within which they may have been in a dangerous position is immaterial. We think this is particularly true when it is considered that the objects that did fall may have been one of the statuettes or some of the shams placed upon or over the shelf.

We are not unaware that the plaintiff in her description of the board or object that fell upon her as appearing to be a board about a foot wide and four and a half or five feet long, that is to say, of the same shape, size or length as the shelving boards over the stairway, but

we think the evidence is conclusive and not in dispute that these boards were securely nailed down and constituted a part of the building and that any inspection that might have been made to determine deterioration would have disclosed no defect in that regard, so it must be observed that there is a distinction or difference as to a lack of safety arising out of a defective condition that might have been discovered by inspection or in a dangerous condition brought about by the negligence of agents or employees of the defendant by piling or placing upon said shelf up over the stairway articles that might at any time slide or fall therefrom. It is argued, however, that the appellee was mistaken about the objects that fell and hit her. That is probably true. She returned to the place where she had been struck a little later and, of course, most probably saw or observed then the overhead boards which she described in attempting to describe what actually had fallen. It is not disputed even by the appellant that some of the shams fell nor is it disputed that the appellee received a cut upon her head requiring surgical attention and treatment. So it must appear that many of the cases cited by appellant upon this point in regard to defective appliances or defects in stairways, bannisters or shelves, are not applicable under the proof when given a favorable consideration on behalf of the plaintiff. True, plaintiff's complaint alleged "the falling of the said plank from which plaintiff was injured was caused by the negligence and carelessness of the defendant." The sham shaped like a plank, though somewhat lighter, weighing less than two pounds, proven and admitted to have been one of the falling objects at the time of the injury, was substantial proof of the allegation of the complaint.

The second error alleged by the appellant is that the court erred in giving instruction No. 1. That instruction as given is as follows: "You are instructed that the burden is on the plaintiff to show by a preponderance of the evidence her right to recover on her complaint; and by a preponderance of the evidence is meant not necessarily the greater number of witnesses, but the greater weight of the testimony, giving to the testimony of each witness

such weight and credit as you think it is entitled to, and you are the sole judges of the credibility of the witness and the weight of the evidence.''

The objection made to this particular instruction is that it did not give to the jury a rule to follow in determining the weight of the testimony and credibility of the witnesses. The objection was made in due time to the instruction as given and a proper suggestion was made to the court by a specific objection announcing a time-honored, perhaps stereotyped rule approved many times over by this court, as follows: ''Giving to the testimony of each witness such weight and credit as you may find it is entitled to when you have considered and determined the witness' interest in the case, his or her relationship to the parties, bias or prejudice, means of information and manner of the testifying, and after weighing the same by these rules, give to the testimony of each witness such weight and credit as you think it is entitled to, as the same does, or does not, comport with the truth.''

We think it would have been better had the court followed this somewhat ancient formula. To a certain degree it is dangerous to depart from long established uses and practices approved by the court on every occasion when it has been proper to consider such propositions. Yet we cannot say that there was prejudicial error in a failure on the part of the court to amend the instruction as suggested by appellant's counsel. Without attempting to analyze or make detailed comment on the additional elements proper to have been added to the instruction as given we suggest that the omitted part calls the attention of the jury to the fact that the jury has in its presence the witnesses whose conduct they may have observed and that they may consider any interest the witness may have or any bias or prejudice. It would perhaps be somewhat hard indeed to find a jury that would not sharply appreciate these particular conditions, and would not consider them in arriving at a verdict even without such instruction. The members of this court who have spent the greatest number of years in the actual practice know that juries are quick to observe interest, or bias whether such interest arises out of the

relationship to the parties or out of bias or favor on account of parties or conditions. But it may be possible at times to have a jury inexperienced and no member of which had served upon any former jury. On such an occasion it would be proper indeed to give such precautionary instructions as were omitted in this case. The instruction as given is substantially the effect of what was requested, the requested portion being only an elaboration or enlargement of the statements contained in the instruction as given.

The third matter alleged as error arises out of the giving of instruction No. 2 given, at the request of the appellee. Instruction No. 2 is as follows: "You are instructed that it was the duty of the defendant to exercise reasonable care to furnish the plaintiff a reasonably safe place in which to work, and if the defendant failed to do so and the plaintiff was injured thereby, then you are told that such failure on the part of the defendant, if any, to furnish the plaintiff a safe place in which to work was negligence."

The only error alleged in this instruction arises out of the last part of it where it says "to furnish the plaintiff a safe place in which to work was negligence." We agree with appellant that it perhaps would have been better had the court said "exercise ordinary care to furnish the plaintiff a safe place within which to work." That was said in the foregoing and first part of the instruction. The language used, however, was "reasonable care" instead of "ordinary care." "Reasonable care" has been determined as being not essentially different from "ordinary care" and we think that announcement of the law was correct. *Natural Gas & Fuel Co.* v. *Lyles*, 174 Ark. 146, 294 S. W. 395.

But again we suggest that it is still better to follow those long-proven and correct announcements of the law, so easily understood and so hard to misinterpret, but from the foregoing cited case it must be said that the use of the word "reasonable" instead of "ordinary" was not prejudicial error.

We think it was made plain not only in instruction No. 2 that the defendant was required not to furnish a

reasonably safe place, but to exercise ordinary care to do so. It is hardly probable the instruction was misunderstood, as in the instruction the jury was told, and the last expression must have been regarded more as a repetition than as a contradiction. The court made this point perfectly clear in giving instruction No. 7 requested by the appellant as amended at the time it was given wherein the court stated "that the defendant was not under any absolute duty as an employer of the plaintiff to furnish her with any particular kind of steps or shelves above the same, or to stack the shams or pasteboard shelves or other objects in a manner so that they would not jar loose or fall, but that the defendant's duty was only to exercise ordinary care to provide the shelves above the stairs to stack the shams or pasteboard shelves or other objects in a manner as to be reasonably safe, etc.,".

The two instructions, that is to say No. 2 and No. 7, when read together certainly make clear the duty of the master to the servant to the jury and meet the objection made by appellant in regard to the clumsy expression in instruction No. 2.

It is also urged that in giving instruction No. 2 the court omitted to instruct the jury as to the defense of assumed risk. Instruction No. 2 was not what is generally called a binding instruction. That is to say, it was not one in which the jury was told if they found certain conditions to be true to find for the plaintiff or defendant, as the case might be, and being such omitted from consideration, as suggested in this case, a substantial defense urged by the defendant corporation.

The effect of this instruction was to aid the jury in a determination of whether or not the defendant might be charged with negligence and so far as this instruction was concerned, even though the jury might find that the defendant was guilty of negligence, the jury was not directed to determine on that account the issues in favor of the plaintiff. That defense of assumed risk was reserved for another instruction and it was not necessary to mention the defense of assumed risk in giving to the jury an instruction whereby they might determine the sole

issue of negligence. In this case the jury might find there was negligence and still find for the defendant on the ground of assumed risk. The two instructions Nos. 2 and 7 are not in conflict and do not place upon any employer an undue burden as in *Ft. Smith-Spadra Mining Co.* v. *Shirley,* 178 Ark. 1007, 13 S. W. 2d 14, or *Spadra Coal Co.* v. *White,* 188 Ark. 568, 66 S. W. 2d 1072. In that respect this instruction differs from the authorities cited by appellant in regard to the defense as suggested. The case is differentiated from such cases as *Postal Telegraph Cable Co.* v. *White,* 188 Ark. 361, 66 S. W. 2d 642. In that case we discussed the effect of a so-called binding instruction given without suitable statement as to the defenses presented. In this case the defense of assumed risk was properly given to the jury under another instruction. The verdict makes further discussion on that matter superfluous.

The next objection urged is in giving instruction No. 5 by the court to aid in a determination of the amount of recovery in the event the jury should find for the plaintiff. This is the usual or ordinary instruction given in such cases and we do not think we are justified in extending unnecessarily a discussion of the instruction, although there were specific objections made, because it is urged as the chief objection that there is no evidence to show that she suffered by reason of the negligence of the defendant. This objection is a mere rehash of the first objection made and the second specific objection is that there is no evidence to sustain a recovery against defendant for damages resulting to plaintiff and that there is no evidence of pain and suffering, no evidence of impairment of plaintiff's earning capacity, no evidence of the probable consequences of the alleged injuries that may be reasonably anticipated. These objections are more nearly technical than meritorious. It takes little proof to show that a deep cut on the side of the head is painful; that a badly swollen arm and shoulder are painful, or that such pain would tend to the impairment of plaintiff's proficiency in the performance of her work as a saleslady, nor did it require very much evidence to show that when this plaintiff had been put to bed and

kept there several weeks under the care of a physician, with her arm and shoulder bound securely in a fixed condition, when witnesses testify to her nervousness, to her complaints, to her lack of sleep, except under the influence of drugs that she suffered from the painful and distressing experiences. These matters were all before the jury, submitted to it under instructions for their determination of the facts. We might suggest in this regard that many of the questions sometimes asked witnesses and answers given in regard to serious accidents, lacerations, cuts, bruises, or loss of limbs, as to pain and suffering, are unnecessary attempts at proof of facts known by every one who understands the extent of injuries.

There remains but one other matter that appellant suggests as erroneous. Appellant urges that the verdict of the jury was excessive. It is true in this case that the plaintiff has not shown a great amount of earning capacity. She has shown a rather serious physical condition arising out of the injury. She has shown great suffering, long confinement to her bed, seen and treated constantly by a physician, so tortured with pain and nervousness so great that she could not sleep or rest. She lost considerable weight, a condition perhaps somewhat of what might have been expected at the time of the injury. But no one might reasonably have anticipated consequences so serious and so long endured. The cut on the side of her head was perhaps the least important of her physical ailments and disturbances. It apparently healed within due and proper time and without serious consequences, unless the nervous condition may have arisen out of that injury.

We have given to this evidence in regard to her suffering full consideration and we cannot say that the verdict of the jury in regard to the extent of her injuries and the amount she should recover was not supported by substantial evidence.

The judgment should be affirmed. It is so ordered.