BILL DAVIS TRUCKING, INC. *v.* Michael L. PRYSOCK

89-296                                          784 S.W.2d 755

Supreme Court of Arkansas
Opinion delivered February 26, 1990

388

*Barber, McCaskill, Amsler, Jones & Hale, P.A.,* for appellant.

*James F. Swindoll, P.A.,* for appellee.

JACK HOLT, JR., Chief Justice. The appellants claim the amount of compensatory damages awarded by the jury was based on speculation and was excessive. We disagree and affirm.

This personal injury action arose out of an automobile collision that occurred on June 3, 1987, about a mile and a half south of Tuckerman, Arkansas, on U.S. Highway 67. Appellee, Michael L. Prysock, a thirty-five year old farmer, was driving south in his truck, carrying a load of wheat to the grain dryer. Appellant, James Skaggs, was driving behind Prysock in a tractor trailer truck belonging to appellant, Bill Davis Trucking, Inc.

Skaggs' truck hit the rear end of Prysock's truck at a high rate of speed. Prysock's truck rolled over twice, and Prysock was thrown through the cab window. He landed approximately twenty feet from his truck. Prysock was knocked unconcious by the blow and remained in that condition for thirty minutes. An ambulance transported him to the hospital, where he remained for three days with complaints of pain and stiffness in his neck and left arm, and numbness all over his body.

Shortly thereafter, Dr. Roland Reynolds, a family practitioner, began treating him. Dr. Reynolds testified that on Prysock's first visit, he was having pain in his left hand, thumb, index finger, and third finger, and aches in his left arm. Reynolds' examination of Prysock's neck revealed that Prysock had pain with both extension and flexion and with rotation of his neck to the left. Prysock had a left radial nerve deficit, or a decreased sensation of pain and touch in his left radial nerve, and a strain in his left trapezius muscle. At this point, Reynolds placed him on a muscle relaxant and referred him to a neurosurgeon. Later, Prysock was sent to a neurologist, who performed EMG and nerve condition studies. Both the neurosurgeon's and neurologist's findings were consistent with Dr. Reynolds' diagnosis.

Dr. Reynolds examined and treated Prysock on a number of occasions from September 24, 1987, until October 4, 1988. Prysock had the following symptoms on these visits:

September 24, 1987: Pain and stiffness in his left hand; crepitus, pain, and stiffness in his neck; and crepitus in his left shoulder.

March 29, 1987: Pain between his shoulder blades caused by shoveling; and complaints of numbness in his neck.

April 12, 1988: Soreness in his back, particularly between his shoulder blades; and tingling in his fingers.

May 12, 1988: Pain in the left side of his neck all the way down to the lower spine caused by driving a tractor.

June 14, 1988. Crepitus in his left shoulder; some pain when stretching or turning.

October 4, 1988. Constant ache in his left arm and shoulder; tenderness of the nerves in his neck; and pain while lifting, straining, or stooping.

During this time frame, Prysock was prescribed several medications for his condition. In addition, other tests were performed, and he was examined by another neurosurgeon. His medical bills totalled $4,086.61.

Reynolds testified that none of Prysock's conditions are likely to get better and will probably become worse because of the

type of work that Prysock does; that he may need surgery in the future; that his injury is permanent; that he will need to return for treatment periodically; that he will need more medication and, possibly, physical therapy; and that Prysock's discomfort will be cyclical, depending on the amount of physical effort expended.

Prysock testified that he wakes up in the morning stiff, that his left hand is still numb, that he cannot do much hard work or lift much with his left arm, that his injury has affected his ability to farm, and that his condition is not improving.

He also testified that he does not work as efficiently as he used to and, as a result, has had to change his method of planting wheat from drilling to broadcasting. Drilling requires lifting sixty pound sacks, which Prysock is unable to do because of his condition. Broadcasting requires more seed to get the same yield. As a result, in 1988, he had to buy 440 extra bushels of seed at $6 a bushel, which cost him $2,640.

Prysock owns 97 acres of land and farms an additional 640 acres. He double crops, which means he plants two crops in a year. He testified that he began the wheat harvest on June 2, 1987. He was injured the next day. He returned to the fields on June 8 to harvest the wheat with the help of his ten-year-old son. It was necessary to get the crop harvested so that he could plant his soybean crop. It took him until June 17 or 18 to harvest the wheat crop.

He estimated that he would have finished the harvest by June 10 if he had not been in the accident. As a result of the late harvest, he was delayed in planting his soybean crop, which he did in July.

Prysock testified that a hard rain came while he was in the hospital and beat down a lot of the wheat and, as a result, he lost 1643 bushels of wheat at $2.52 a bushel, or $4,140.36. Since his soybean crop was late in being planted, an early frost cut down his yield. He lost 716 bushels at $5.48 a bushel, or $3,923.68. In 1988 he had to hire an employee, at a cost of $1302, to help him harvest.

The trial court took judicial notice of the mortality table in Ark. Code Ann. § 18-2-105 (1987), noting Prysock had a life expectancy of approximately forty-four remaining years.

The only issue submitted to the jury was the amount of damages. The jury was instructed under AMI 2201, as modified, that if it found for Prysock on the issue of damages, then it must fix the amount of money that will reasonably and fairly compensate him for the following elements of damage sustained: (1) the nature, extent, and permanency of any injury; (2) the reasonable expense of any necessary medical care, treatment, and services received in the past, and the present value of any such services reasonably certain to be experienced in the future; (3) any pain, suffering, and mental anguish experienced in the past, and reasonably certain to be experienced in the future; (4) the value of any earnings lost in the past and the present value of loss of ability to earn in the future; and (5) any scars and disfigurement. The jury returned a general verdict in the amount of $198,000.

There were no objections to any of the testimony or trial proceedings. For reversal, appellants' sole contention is that the damages awarded were based upon speculation and were excessive. We disagree.

Where it is contended that there is insufficient evidence to support the amount of the award of compensatory damages, this court must decide whether the award is so great that it shocks the conscience of the court or demonstrates that the trier of fact was motivated by passion or prejudice. *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). *See also O'Neal Ford, Inc.* v. *Davie*, 299 Ark. 45, 770 S.W.2d 656 (1989); *Garst* v. *Cullum*, 291 Ark. 512, 726 S.W.2d 271 (1987). In determining whether the amount was so great as to shock the conscience, we consider such elements of damage as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish. *Matthews, supra.*

A jury has much discretion is awarding damages in personal injury cases. *Morrison* v. *Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981).

In this case, one element of damage is measurable with exact certainty, i.e., Prysock's past medical expenses in the amount of $4,086.61. However, future medical expenses do not require the same degree of certainty as past medical expenses. *Honeycutt* v. *Walden*, 294 Ark. 440, 743 S.W.2d 809 (1988);

*Matthews, supra.* It is not speculative or conjectural to calculate future medical expenses where there is a history of medical expenses that have accrued as of the date of trial, particularly where there is also a degree of medical certainty as to the need for future medication. *Williams* v. *Gates,* 275 Ark. 381, 630 S.W.2d 34 (1982).

A copy of Prysock's medical bills and a medical itemization demonstrating $4,086.61 in past medical damages were submitted to the jury. Dr. Reynolds testified that Prysock's injury is permanent, that his pain will increase as his work load increases, and that he will require future medical treatment. Prysock testified that he cannot do much hard work with his left arm, that his injury has affected his ability to farm, and that his condition is not improving. Both the doctor and Prysock testified that all of the medical bills were incurred as a result of his injury caused by the accident. In sum, this evidence was sufficient for the trier of fact to consider this element of damage.

■ In addition, Prysock proved a permanent injury with reasonable certainty. *Handy Dan Improvement Center, Inc.* v. *Peters,* 286 Ark. 102, 689 S.W.2d 551 (1985). *See also Matthews, supra.* There was medical testimony that Prysock sustained an injury, suffered pain and discomfort up until the time of trial, and that none of his conditions are likely to get better, but will probably become worse. The jury could reasonably conclude that the consequences of his injury will occur in the future. *East Texas Motor Freight Line, Inc.* v. *Freeman,* 289 Ark. 539, 713 S.W.2d 456 (1986).

■ Prysock presented proof of loss of past earnings by testifying concerning the amount of the additional expenses incurred because of the injuries he sustained, and showed his loss of earning capacity, or his loss of ability to earn in the future. The probable diminution of earning capacity may be inferred from evidence of impaired ability to work, despite the absence of direct proof of the value of the diminished capacity. *Haney* v. *Noble,* 250 Ark. 557, 466 S.W.2d 467 (1971). *See also Honeycutt, supra.* The testimony in this case clearly established that Prysock sustained a permanent injury that will impair his capacity to earn.

Prysock presented sufficient proof of pain, suffering, and

mental anguish, and is entitled to a recovery for this element in the past as well as that reasonably to be experienced in the future. *See Matthews, supra; East Texas Motor Freight Line, Inc., supra; The Scott-Burr Stores Corp.* v. *Foster*, 197 Ark. 232, 122 S.W.2d 165 (1938); *Pursley* v. *Price*, 283Ark. 33, 670 S.W.2d 448 (1984).

We recognize that the amount of the award is undeniably liberal. However, when we take into account all elements of damages, we cannot say that the amount of the award, $198,000, is so great that it shocks the conscience of the court or demonstrates that the jury was motivated by passion or prejudice. *Matthews, supra.*

Affirmed.

TURNER, J., dissents.

OTIS H. TURNER, Justice, dissenting. Based upon the record in this case, I am convinced that the jury award is excessive. I would order a remittitur or a new trial, the option resting with appellee.