HEANEY, Senior Circuit Judge.
Globe International, Inc., published archive photographs of Nellie Mitchell to illustrate an unflattering and fictional story in one of Globe’s supermarket tabloids. Mitchell sued Globe for defamation, invasion of privacy, and intentional infliction of emotional distress. The jury found for Globe on defamation, but returned a verdict for Mitchell on the remaining claims, awarding $650,000 in compensatory and $850,000 in punitive damages. Globe appeals, contending there was insufficient evidence to support the verdict as a matter of law. We affirm as to liability and punitive damages, and remand for a substantial re-mittitur of compensatory damages.
*1067 BACKGROUND
Plaintiff Mitchell is a ninety-seven-year-old woman from the city of Mountain Home, in Baxter County, Arkansas. After having operated a newsstand and delivered newspapers in Mountain Home for almost fifty years, Mitchell has become a well-recognized figure in her community and something of a local legend. She was recognized for her long service in 1980 when major newspapers ran human interest stories about her and she appeared for interviews on television talk shows.
Defendant Globe publishes several supermarket tabloids, including the National Examiner and the Sun. Globe published a fairly accurate account of Mitchell in the November 25, 1980, issue of the National Examiner. A photograph of Mitchell, purchased from the Baxter County News, accompanied that story.
The same photograph appeared again on the cover page of the October 2, 1990, edition of the Sun with the headline “Pregnancy forces granny to quit work at age 101.” Customers at supermarket checkout lines in Baxter County who scanned the cover page of the Sun saw only that Nellie Mitchell was featured next to a headline about a “granny” forced to quit work because of pregnancy. Purchasers of the tabloid who turned to the story on page eleven also would have seen a second photograph of Mitchell next to a fictitious story about a woman named “Audrey Wiles,” living in Australia, who quit her paper route at the age of 101 because an extramarital affair with a millionaire client on her route had left her pregnant.
Word spread quickly in Mountain Home that Nellie Mitchell, “the paper lady,” was featured in the offending edition of the Sun. This edition of the Sun was a “sellout” in the northern region of Arkansas where Mitchell lives.
Mitchell filed suit against Globe in Arkansas state court for libel. After removal to federal district court, and denial of Globe’s motion for summary judgment, the district court allowed Peoples Bank and Trust Company of Mountain Home, as conservator of Mitchell’s estate, to file an amended complaint against Globe for defamation, false light invasion of privacy, and outrage (intentional infliction of emotional distress). The parties tried the case before a jury on December 2-4, 1991. The eight-person jury returned a unanimous verdict awarding Mitchell $650,000 in compensatory and $850,000 in punitive damages for invasion of privacy and outrage. The jury found for Globe on the defamation claim. Judgment was entered against Globe on the jury verdict.
After the trial, Globe moved the district court for judgment as a matter of law, and alternately for remittitur and a new trial. The district court denied the post-trial motion.[1] Globe now appeals from the order denying the motion, arguing that Mitchell cannot prevail as a matter of law, and that the evidence does not support an invasion of privacy claim or the tort of outrage.
DISCUSSION
Because the instant case raises First Amendment issues, we. are obligated to make an independent examination of the whole record to be certain the judgment does not constitute a forbidden intrusion on the field of free expression. Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502, 515 (1984). We have exercised independent judgment on that issue and find that the judgment entered on the jury verdict in this case does not violate the relevant constitutional norms.
The law of this case, to which Globe takes no exception, is framed in the district court’s instructions to the jury. Those instructions, discussed below, provide the highest threshold of constitutional free speech protection and require no modification.[2] Despite the evidentiary burden, the *1068 jury reached a verdict that Globe now asserts the evidence could not support. Globe further contends the case should not have been submitted to the jury because it is appropriate for resolution as a matter of law. We disagree.
I. False Light Invasion of Privacy
The district court gave the following instruction regarding “false light” invasion of privacy:
to prevail on this claim, the plaintiff has the burden of proving by clear and convincing evidence the following: one, that the false light in which she was placed by the publicity would be highly offensive to a reasonable person; and two, that the defendant acted with actual malice in publishing the statements at issue in this case. Actual malice means that Globe International intended, or recklessly failed to anticipate, that readers would construe the publicized matter as conveying actual facts or events concerning Mrs. Mitchell. A finding of actual malice requires a showing of more than mere negligence.
District Court Jury Instruction No. 12.[3]
Globe does not dispute that the published story was false; indeed, its principal defense is that the story was “pure fiction.” Nor does Globe dispute that the story would be highly offensive to a reasonable person, or that it was in fact highly offensive to Mitchell. The central issue on appeal is the existence of actual malice: whether Globe intended, or recklessly failed to anticipate, that readers would construe the story as conveying actual facts or events concerning Mitchell. Globe contends that, as a matter of law, no reader reasonably could construe the story as conveying actual facts about Mitchell, and that no evidence supports a finding that Globe intended that result.
A. Reasonable Believability
Globe argues that readers could not reasonably believe the story represented true facts or events concerning Mitchell. It asserts it is biologically impossible for a woman of either 101 or 95 years of age to become pregnant, and therefore, as a matter of law, no reasonable reader could have believed the story represented true facts about Mitchell.
In Greenbelt Coop. Pub. Ass’n v. Bres-ler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), the Supreme Court found that actual malice did not exist in a defamation claim against a publisher-defendant, “as a matter of constitutional law,” because the newspaper’s use of the word “blackmail,” in the circumstances of that case, could not have been believed to refer to the actual crime of blackmail. According to the Court, “[i]t is simply impossible to believe that a reader who reached the word ‘blackmail’ in either article would not have understood exactly what was meant____ [E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole____” Id. at 14, 90 S.Ct. at 1542.
Similarly, in Pring v. Penthouse Int’l, Ltd., 695 F.2d 438 (10th Cir.1982), cert. denied, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983), the Tenth Circuit noted that the central issue was “this requirement that the story must reasonably be understood to describe actual facts about the plaintiff.” Id. at 440. The court stated that the test
is not whether the story is or is not characterized as “fiction,” “humor,” or anything else in the publication, but whether the charged portions in context could be reasonably understood as describing actual facts about the plaintiff *1069 or actual events in which she participated. If it could not be so understood, the charged portions could not be taken literally.
Id. at 442. The Pring court concluded that the published story was “obviously a complete fantasy,” id. at 443, and therefore not actionable as defamation or false light invasion of privacy.
In the instant case, Globe argues only that the assertion of pregnancy could not reasonably be believed, and therefore must render the whole story an obvious, non-actionable “fiction.” Every other aspect of the charged story, however — such as the implication of sexual impropriety and that Mitchell was quitting her life-long profession — is subject to reasonable belief. Even the report of the pregnancy — a physical condition, not an opinion, metaphor, fantasy, or surrealism — could be proved either true or false. In the context of this case, therefore, we cannot say as a matter of law that readers could not reasonably have believed that the charged story portrayed actual facts or events concerning Mitchell. We decline to reverse the verdict of the jury that arrived at the same conclusion.
B. Circumstantial Analysis
Our conclusion is strengthened by a complete review of the charged story and the circumstances of its publication. The Supreme Court counsels that a reviewing court must examine for itself the statements in issue and the circumstances under which they were made to see whether they are of a character that the principles of the First Amendment protect. Harte-Hanks Communications, Inc. v. Cannaughton, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989). The Ninth Circuit also has noted that “the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980) (emphasis added); see also Dworkin v. Hustler Magazine, Inc., 668 F.Supp. 1408, 1416 (C.D.Cal.1987) (“It is also important ... to consider the surrounding circumstances in which these statements were made, the medium by which they were published and the audience for which they were intended.”), aff'd, 867 F.2d 1188 (9th Cir.), cert. denied, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989).
The circumstances of the instant case suggest the story in the Sun may well be believed by readers as conveying actual facts about Mitchell despite the apparent absurdity of a pregnant centenarian. Indeed, there is more than sufficient evidence to conclude that Globe intends its readers to believe the Sun generally. Although there is less evidence to conclude that Globe intended its readers to believe facts specifically about Mitchell, we conclude there is sufficient evidence to find that it recklessly failed to anticipate that result.
1. The Medium
Globe contends that actual malice, as a matter of law, cannot exist in a work that is intended to be an obvious fiction. Traditionally, to find malice in a defamation case there must first be a false statement of fact. Old Dominion Branch No. 496, Nat’l Ass’n of Letter Carriers v. Austin, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974) (“Before the test of reckless or knowing falsity can be met, there must be a false statement of fact.”). Once the false statement of fact is established, a court may find constitutional malice only if the defendant knowingly falsified or in fact entertained serious doubts as to the truth of its publication. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).
Fiction, however, is by definition not factual. Therefore, as the Ninth Circuit has stated, “if a speaker knowingly publishes a literally untrue statement without holding the statement out as true, he may still lack subjective knowledge or recklessness as to the falsification of a statement of fact required” to find actual malice. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1194-95 (9th Cir.), cert. denied, 493 U.S. 812, 110 S.Ct. 59, 107 L.Ed.2d 26 (1989). The constitutional analysis for works of *1070 “fiction,” therefore, must first determine what factual assertions, if any, are held out as true. Our analysis of the Sun “newspaper” at issue leads us to conclude that Globe does not intend the Sun to be an obvious work of fiction at all, but rather holds out the publication as factual and true.
The format and style of the Sun suggest it is a factual newspaper. Globe advertises the Sun as publishing “the weird, the strange, and the outlandish news from around the globe,” and nowhere in the publication does it suggest its stories are false or exaggerated. The Sun also mingles factual, fictional, and hybrid stories without overtly identifying one from the other. At trial, even its own writers could not tell which stories were true and which were completely fabricated.
In the October 2, 1990, issue submitted as evidence, the Sun consistently alerted its readers to advertisements with small-print caveats above the text of those advertisements. The Sun even published a disclaimer above certain personal advertisements warning its readers that those notices had not been investigated — implying that other advertisements and the news stories had been investigated. These disclaimers and caveats on advertisements, and the absence of any warning or explanation on the admittedly fictional “news” stories, bolster our conclusion that Globe intends for its 366,000 readers to believe the Sun prints factual material. It is the kind of calculated falsehood against which the First Amendment can tolerate sanctions without significant impairment of its function. See Time, Inc. v. Hill, 385 U.S. 374, 389, 87 S.Ct. 534, 542-43, 17 L.Ed.2d 456 (1967).
2. Other Considerations
Globe was on notice that the photographs of Mitchell it published in its October 2, 1990, issue of the Sun were purchased from Baxter County, Arkansas — an area where Globe circulated the Sun. Counsel at oral argument conceded that the photographs were identified on the back as having been purchased from the Baxter County Bulletin. The editor who chose the photograph testified that he knew the individual pictured in the photograph was a real person, but that he assumed she was dead. This was the same editor who, ten years before, had worked for the Examiner when it published the essentially truthful story about Mitchell.
Although Globe’s failure to investigate and confirm its assumption of Mitchell’s death will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category. Harte-Hanks, 491 U.S. at 692, 109 S.Ct. at 2698. Globe contends it made a simple mistake, and that it was not on notice that Mitchell was alive. The jury, however, had sufficient evidence to determine that Globe purposefully avoided the truth about Mitchell.
After carefully reviewing the entire record, we find the evidence is sufficient to support a jury verdict awarding damages for false light invasion of privacy, and that the judgment does not constitute a forbidden intrusion on the field of free expression. Because we affirm the general verdict as to the invasion of privacy, we do not reach the question whether the evidence supports the separate tort of outrage.
II. Remittitur
The jury’s verdict awarded Mitchell $650,000 in compensatory and $850,000 in punitive damages. Globe moved for a remittitur, but the district court denied the motion. Globe contends the district court abused its discretion in not granting its motion. Our scope of review over a damage award is extremely narrow, and we may not reverse except for a manifest abuse of discretion. American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir.1986). We are guided by the law of the forum state in weighing the excessiveness of a verdict. Id.
A. Compensatory Damages
Under Arkansas law, where it is contended that there is insufficient evidence to support the amount of the award of compensatory damages, a reviewing *1071 court must decide whether the award is so great that it shocks the conscience of the court or demonstrates that the trier of fact was motivated by passion or prejudice. Bill Davis Trucking, Inc. v. Prysock, 301 Ark. 387, 784 S.W.2d 755, 757 (1990). In determining whether the amount was so great as to shock the conscience, the court may consider such elements of damage as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, pain, suffering, and mental anguish. Id. The jury has wide discretion in awarding damages. Id.
In the instant case, the district court instructed the jury to consider the following elements of damages: damage to reputation, mental suffering and emotional distress, and effects on health. The amount of the compensatory damages award, $650,000, based on those considerations, is undeniably liberal. Though we are convinced that sufficient evidence exists to sustain a compensatory award for damage to Mitchell’s reputation and her mental suffering, we also conclude the amount of the award is shocking and exaggerated.
In its memorandum denying the post-trial motion, the district court equated “Nellie’s heretofore unsullied photograph” with “her very ‘being,’ ” and noted they were “literally buried in ... muck, mire and slime.” 786 F.Supp. at 795. We agree that Mitchell’s reputation was damaged, but this description of her injury, like the compensatory award itself, is exaggerated.
The evidence regarding damages was limited to testimony describing Mitchell as angry, upset, humiliated, embarrassed, depressed, and disturbed after learning of the article and the photographs in the Sun. The outward manifestation of her humiliation and depression was limited to avoiding other people for a few days and a temporary loss of a certain blithe cheerfulness, apparently typical of her personality, which one witness described as a loss of the “sparkle” in her eyes. There was, however, no evidence of adverse effects on Mitchell’s health and no evidence of lost earnings, permanent injury, medical expenses, diminution of earning capacity, or future pain and suffering — all of which were present in the Prysock case.
This evidence, although sufficient to sustain an award, does not support the shockingly inflated award granted by the jury. Accordingly, we find an abuse of the district court’s discretion in not granting a remittitur on compensatory damages, and remand for a substantial remittitur.
B. Punitive Damages
The district court did not instruct the jury on punitive damages until after the jury already had returned a verdict on compensatory damages. The court then again required the jury to determine, by clear and convincing evidence, if Globe had acted with actual malice in publishing the statements at issue in this case. Only after the jury again had answered affirmatively did the court then instruct the jury as to factors that may be considered in imposing punitive damages. Those factors were: (1) that punitive damages should bear a reasonable relationship to the harm that has occurred or is likely to occur from the defendant’s conduct; (2) the degree of reprehensibility of defendant's conduct; (3) the financial position of defendant; and (4) the likelihood the award will deter the defendants or others from similar conduct.
In formulating its instructions, the district court adequately considered the criteria set forth in Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. -, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), as well as the appropriate Arkansas law. We find that the district court did not abuse its discretion in declining to remit the award for punitive damages.
After a complete review of the record, we find no other errors. Accordingly, for the reasons set forth above, we affirm the judgment of the district court as to liability and punitive damages, and remand for a substantial remittitur of compensatory damages.

. The district court’s memorandum opinion provides further background. See Peoples Bank and Trust Co. v. Globe Int'l Inc., 786 F.Supp. 791 (W.D.Ark.1992).

. The instructions required a finding of “actual malice” by clear and convincing evidence. The district court properly applied this stringent standard, as required by Arkansas law, to the *1068 false light invasion of privacy claim. See Dodrill v. Arkansas Democrat Co., 265 Ark. 628, 590 S.W.2d 840 (1979), cert. denied, 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980). Because we conclude Nellie Mitchell was not a public figure, however, and the charged speech involved no issue of public concern, presumed and punitive damages might properly have been awarded on the defamation claim — even absent a showing of "actual malice” — without infringing First Amendment free speech protections. See Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761, 105 S.Ct. 2939, 2946, 86 L.Ed.2d 593 (1985).

. Conforming with Dodrill supra.