AUTO SALES COMPANY, INC. *v.* MAYS.

4-4071

Opinion delivered December 16, 1935.

*K. T. Sutton,* for appellants.

*J. M. Jackson* and *Peter A. Deisch,* for appellee.

SMITH, J. Appellee, Mays, brought this suit to rescind a contract for the purchase of an automobile, and also to recover certain expenses incurred in putting the car in first-class condition, as it was represented to be when sold, and from a decree in his favor is this appeal.

The sale was evidenced by a written contract signed by C. N. Summers, who was designated therein as the seller, and by A. L. Mays, who was designated as purchaser. Mays testified that he purchased the car as he supposed from the Auto Sales Company, and that his copy of the contract named that corporation as the seller. This copy was not produced at the trial. The copy which was produced, and which was signed by Mays referred to only Summers as the seller.

But, regardless of this conflict in the testimony, Mays insists that the car was purchased from Summers as the agent of the sales company, which company was in fact the seller.

The Hudson Motor Car Company was made a defendant along with the Auto Sales Company, but there was no service upon or entry of appearance by it, and the decree, as we interpret it, was not rendered against the Hudson Company, and, of course, should not have been.

The Auto Sales Company is a corporation domiciled in Memphis, Tennessee, and insists that proper service was not had upon it, but, before raising that question, it had filed in the cause an answer, a demurrer and a motion for a continuance. The filing of any one of these pleadings operated to enter the appearance of the company and renders unimportant the question of the sufficiency of the service. *Chapman & Dewey Lbr. Co.* v. *Bryan,* 183 Ark. 119, 35 S. W. (2d) 80.

The decree of the court below was based upon the finding that Summers was the agent of the Auto Sales Company, hereinafter referred to as the company, and had made a sale of the car for his principal. It is insisted that this finding is unsupported by the testimony.

We think, however, the testimony does support that finding. It was admitted that Summers had previously been the agent of the company, but he and the manager of the company testified that he did not occupy that relation at the time of the sale. It was shown, however, that Summers had been arrested at Helena for failure to pay an occupation tax as an automobile salesman in that city. He was released from arrest upon the payment of the tax by the company, the receipt for which tax was issued in its name on January 12, 1934, and the sale in question was made while this receipt was effective. When Mays bought what he supposed to be a new car, he traded in an old one. This old car was delivered to the sales company by Summers, and it was admitted that this was done pursuant to an arrangement to that effect under which Summers made sales of cars. The company was shown to have paid storage on a wrecked car, which had been sold by Summers. One McMillan testified that he bought a similar car about the time Mays purchased his, and that Summers could not close the deal until the sales company gave assent to certain of its details. When the defects in the car appeared, the sales company directed that it be brought to Memphis for repairs; and several trips were made to the garage of the sales company for that purpose. The proof of these facts suffice to establish the existence of Summers' agency, and that in making the

sale he had acted for his principal, the Auto Sales Company.

We do not recite the testimony as to the defects in the car. They were shown to have been of such a character as to have entitled Mays to a rescission of the sale. Indeed, the testimony appears to show that a car sold as new, and for the price of a new car, was in fact a used car when sold to Mays. He was asked by the company's attorney, "Did Mr. Summers offer to give you a brand new car, a 1935 model, for this car and $100?" He answered that Summers did not, but that the manager of the sales company had.

Mays might have asked a rescission of the sale of the car upon discovering that it was not the car which it was sold and warranted to be, but he did not elect so to do. On the contrary, he continued to use it without tendering its return. The measure of Mays' damages, therefore, was the difference between the value of the car in good condition, or new as it was represented to be, and the value in its defective condition as it was at the time of the sale. *Fine* v. *Moses Melody Shop,* 182 Ark. 155, 30 S. W. (2d) 317.

The purchase price of a new car was $676, which was the price Mays contracted to pay. The decree appealed from permits Mays to retain the automobile and directs that the defendant, "pay to the plaintiff, A. L. Mays, the sum of $603.76, the amount which is found to be due the plaintiff with interest at the rate of 6 per cent. from date until paid. If the unpaid notes for the purchase price are surrendered and cancelled, then the defendants are to be given credit for the amount thereof."

It is obvious from these recitals, that the court did not attempt to grant relief by way of rescission. Mays had not elected to exercise that option, and in this the court was correct. But we are of the opinion that excessive damages were awarded. The manager of the sales company was asked by the court, "What is the depreciated value of the car?" He answered, "About $250." There was no amplification of this statement, and we interpret it to mean that this was the value of a car for which Mays had agreed to pay $676. Mays was there-

fore overcharged $426 for the car, for which excess he should have judgment; but this judgment may be satisfied *pro tanto* by the surrender and cancellation of any outstanding and unpaid purchase money notes.