Wilson *v.* Luck.

4-6251                                    146 S. W. 2d 696

Opinion delivered January 6, 1941.

*Steve Carrigan* and *Steel & Steel,* for appellant.

*John P. Vesey* and *W. S. Atkins,* for appellee.

SMITH, J. Appellant Wilson and appellee Luck were opposing candidates for the nomination of the Democratic party for the office of county judge of Hempstead county in the primary election held in that county on August 27, 1940. On the face of the returns, Wilson appeared to have won the nomination by a majority of 3 votes. At the request of Luck there was a recount of the votes cast in one township the result of which recount was that Luck had a majority of 9 votes. Wilson then asked that the votes of certain other townships be recounted which request was denied. Whereupon Luck was declared the nominee, and his nomination was duly certified by the Democratic County Central Committee. This action was taken August 31, 1940.

On September 7, 1940, Wilson filed suit to contest this nomination; but it appears that no summons was issued on his complaint until September 19, 1940. The summons was served and returned to and filed with the clerk of the circuit court on September 20, 1940. It appears, therefore, that, under the authority of the case of *Matthews* v. *Warfield, ante,* p. 296, 144 S. W. 2d 22, and the cases there cited, the suit might have been dismissed for failure to comply with the provisions of § 4738, Pope's Digest, but for the proceedings in this case presently to be stated.

The complaint contained many allegations as to illegal votes having been counted for Luck, the most important of which was that many persons were permitted to vote whose names did not appear in the official list

of voters prepared under the authority and direction of § 4696, Pope's Digest, and who had failed to furnish other evidence of their right to vote, as provided by § 4745, Pope's Digest.

A large number of votes were challenged upon the ground that persons enrolled in Civilian Conservation Corps camps were permitted to vote who, though they had resided in the camps for more than six months before the election, had never become citizens of Hempstead county.

Many other votes were challenged upon grounds which will not be discussed, as they relate to matters the law of which has been definitely settled by many decisions of this court. The eligibility to vote of this general class of persons will depend upon the application of the law to the facts as developed in regard to each particular voter.

Without raising or reserving the question of the sufficiency of the service, a demurrer to the complaint was filed on September 16 upon the grounds: (1) that the plaintiff's complaint did not state a cause of action, and (2) that the plaintiff had failed to file a bond for costs.

Without reserving or saving the question of the sufficiency of the service, a motion to dismiss the cause of action was filed September 23, 1940, upon the ground that the plaintiff had not filed a bond for costs.

On the same day there was also filed a motion to dismiss, for the reason "That the plaintiff did not have a summons issued until the 19th day of September, 1940, which said date was more than ten days after the certification complained of in plaintiff's complaint, and which certification applied to only one county—Hempstead county."

The judgment, from which is this appeal, recites that the demurrer had previously been overruled, as had also the motion to dismiss for the want of a bond for costs, and, likewise, "the motion to dismiss on the ground that the plaintiff relies upon the printed list of poll tax payers for the year 1938, and that said list is invalid and was not prepared as prescribed by law. . . ."

An answer was filed October 8, 1940, which did not question the time of filing the complaint or the sufficiency of the service of process thereon. In addition to denying the material allegations of the complaint, a cross-complaint was filed, containing as many—and, perhaps, more—allegations as to illegal and fraudulent votes which were alleged to have been cast for the plaintiff Wilson.

A large number of witnesses were examined in support of the allegations of the complaint, and we have before us a voluminous record of their testimony. According to this record, many illegal votes were cast. The plaintiff relied upon the official list of voters as evidencing *prima facie* the right to vote, and questioned the votes of all persons whose names did not appear on this list. It developed in the taking of the testimony that 190 persons had paid their poll taxes whose names did not appear in the official printed list of voters.

The original of the list of persons who had paid poll taxes, which the collector had furnished to and filed with the county clerk, had been misplaced, and could not be found, due, apparently, to the fact that all official records had been recently removed from Washington, the old county seat, to Hope, the new county seat. But this list of voters had been recorded, as required by § 4696, Pope's Digest, and that record was available.

The court was asked to find—and did find—that this printed list of voters had been prepared and published in substantial compliance with the law; but it was the opinion of the court that this list had lost its *prima facie* verity because of the omission therefrom of the names of the 190 persons who had paid poll taxes, as shown by the records of the collector's office. Testimony was offered to the effect that many persons paid poll taxes who had not assessed their poll taxes; but it is not clear how many of these were included in the list of 190 persons who had paid poll taxes, but whose names did not appear in the printed list of voters.

In making his proof, the plaintiff Wilson had relied upon the *prima facie* verity of the printed list of voters;

but a motion to dismiss was filed when the plaintiff rested his case, upon the ground that the omission of the 190 names destroyed the presumptive verity of the list. It was stipulated that the printed list contained the names of 5,109 persons who had paid poll taxes. When the presiding judge indicated his intention to sustain the motion to dismiss, counsel for contestant stated: ". . . . If the court is now of the opinion that the printed list fails, we ask permission, at this time, to introduce additional testimony regarding the qualifications of these voters. . . ." When asked, "How long will it take?" counsel answered: "All the rest of the day." This request was not then passed upon, and a recess was taken until 1:30 in the afternoon. When the court reconvened in the afternoon, counsel for contestant asked the court to declare the law to be "that the mere fact that approximately 190 names who appear to have paid a poll tax was omitted from the list by either the collector or the clerk, or the printer, would not affect its validity and would not affect the presumptive right of 5,109 persons whose names do appear upon the list to vote." Upon this request the court ruled as follows: "The court will not hold that. The court will merely hold that the failure to include the 190 names whose poll tax was paid make the list inadequate to such extent that it is not in substantial compliance with the law."

After making this declaration of law the court proceeded to say: "The court is adopting the theory of law that contestant has chosen to predicate his case, notwithstanding his pleadings, on the proposition that this list is a legal and valid list and is binding on the court and all parties. Now, since the court has held it is not a legal and binding list and since the court does find that the action is predicated in the pleadings, not exclusively in the pleadings, but practically in the evidence on that allegation, the motion to dismiss will be sustained." And the cause of action was dismissed, and from that judgment is this appeal. Exceptions were duly saved to this ruling, which was properly assigned as error in the motion for a new trial.

It appears, from what has been said, that the suit was not dismissed for failure to comply with the provisions of § 4738, Pope's Digest, and in our opinion it should not now be dismissed for that reason. As has been said, an answer was filed, which did not raise or reserve the question of the sufficiency of the service; and before the motion to dismiss on that account was filed, a demurrer had been filed.

It is, of course, necessary, in any case, for a complaint to be filed, and the complaint in this case was filed within the time allowed by law. It is equally necessary that process should issue upon the filing of the complaint, and that service of this process should be had. But many cases have held that this requirement may be waived, and is waived if an appearance is entered before and without raising the question of service. Among other cases to that effect is the case of *Chapman & Dewey Lbr. Co. v. Bryan,* 183 Ark. 119, 35 S. W. 2d 80. It was there said that the defendant who enters his appearance, without questioning the jurisdiction of the court, submits to the jurisdiction, and that any action on the part of a defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance, and that filing an answer constitutes a general appearance.

The case of *Buschow Lbr. Co. v. Ellis,* 194 Ark. 104, 105 S. W. 2d 531, cites a number of earlier cases to the effect that the sufficiency, or the fact of service, was waived where an answer was filed denying the allegations of the complaint which did not preserve the question of service.

A number of cases are cited in *Mercer v. Motor Wheel Corporation,* 178 Ark. 383, 10 S. W. 2d 852, to support the statement there appearing that "This court is committed to the doctrine, by a long line of decisions, that taking any substantive step by defendant in an action brought against him in the courts operates as a general appearance, and waives the manner of process or any defects therein."

In the case of *Auto Sales Co., Inc.* v. *Mays*, 191 Ark. 884, 88 S. W. 2d 330, it was insisted that the defendant had not been served with process; but before raising that question and answer, a demurrer and a motion for a continuance were filed. It was, there said: "The filing of any one of these pleadings operated to enter the appearance of the company (defendant), and renders unimportant the question of the sufficiency of the service." See, also, *Ferguson* v. *Carr*, 85 Ark. 246, 107 S. W. 1177; *Dunbar* v. *Bell*, 90 Ark. 316, 119 S. W. 670.

It appears to be true, indeed, it is not questioned, that the printed list of voters was prepared in substantial conformity with the law, except that the names of 190 persons, who had paid poll tax, were omitted therefrom, many, if not all, of whom had been permitted to pay without having assessed their poll tax. But, even so, and notwithstanding these omissions, the printed official list of voters had not lost the *prima facie* presumption of verity which § 4696, Pope's Digest, intended it to have, which is and was that the persons whose names were therein contained had qualified and were entitled to vote. This presumption is, of course, not conclusive. One may not be permitted to vote merely because his name appears on the official list of voters, if he is not otherwise qualified. Nor will the omission of one's name from this list deprive him of the right to vote if he is otherwise qualified to do so.

By § 2 of act 123, Acts 1935, p. 339, it is provided that "It shall be unlawful for any person to cast a ballot in any election so held as set forth in § 1 of this act, unless the said person shall have previously assessed and paid a poll tax as now provided by law and which said assessment and payment of poll tax shall have been made by the person casting a vote in person or by some person authorized by such person to assess and pay such poll tax aforesaid; . . . ." *Craig* v. *Sims*, 160 Ark. 269, 255 S. W. 1; *Cain* v. *CarlLee*, 168 Ark. 64, 269 S. W. 57; *Collins* v. *Jones*, 186 Ark. 442, 54 S. W. 2d 400.

The provisions of the statute just quoted from in regard to personal assessment and payment of poll tax

was amended by act 46 of the Acts of 1939, p. 97, in a particular not necessary here to consider.

Section 4696, Pope's Digest, requires the collector to file with the clerk of the county court a list, alphabetically arranged, of all persons who have paid the poll tax assessed against them respectively. The collector is required to authenticate this list by his personal affidavit. The county clerk is required to record this list at once in a well-bound book, and thereafter to deliver a certified copy thereof to the county election commissioners, keeping the original on file in his office. This statute further provides that the election commissioners shall have printed a sufficient number of the list to provide each judge of election with a copy thereof.

All these requirements were complied with except the omission of certain names. The purpose of this statute is, of course, to furnish the judges of election with a list of the names of persons who have paid their poll tax and, *prima facie*, have qualified themselves to vote; and we think the omission of the names did not destroy the value for that purpose of the printed list. It is, notwithstanding these omissions, *prima facie* evidence of all poll tax payments.

But, as we have said, the printed list is not conclusive of that fact, nor is it determinative of one's right to vote. The law contemplates the fallibility of the officers and persons charged with the duty of preparing the list and the possibility of mistakes being made; but to encourage accuracy and to minimize mistakes, § 4745, Pope's Digest, prescribes a penalty for the mistakes made, to be imposed upon the persons making them. But the law does not intend that one qualified to vote shall be deprived of that right through another's mistake. Section 4745, Pope's Digest, is entitled "Evidence of right to vote." Among the numerous provisions of this section of the statute intended to secure to the elector who is qualified to vote the right to exercise that sacred privilege is one relating to persons who had paid poll tax, but whose names were omitted from the printed official list of poll tax payers.

We conclude, therefore, that the court was in error in dismissing this case because of the omission of names from the printed list of voters. The right to hold an election is not dependent upon the printing of the list of voters. A legal election could be held even though the list had not been printed at all. The purpose of printing the list is to facilitate the holding of a fair election, and the object of a contest of that election is to determine which candidate received the required number of qualified votes. The court should, therefore, have permitted the contestant to introduce the offered testimony to elucidate and establish that fact. It is true the plaintiff contestant had rested his case; and it is true also that the trial courts have a wide discretion in the time and manner of introducing testimony; but it must be remembered that, before dismissing the case, the court had previously held that the printed list imported *prima facie* verity, and there was no occasion for the plaintiff to offer other testimony; indeed, it appears, from what we have said, that the printed list of voters did import *prima facie* verity.

As the case must be remanded for a new trial, we take occasion to discuss the right of the enrollees at the Civilian Conservation Corps camps to vote. No doubt many of these enrollees had resided in these camps for six months or more, and in the state for a year or more. Some of these may have become residents of Hempstead county within the meaning of our election law; while others had not. It is a question of fact in each particular case, depending upon the intention of the individual enrollee. If one was in the camp with the intention of remaining there only so long as his connection with the camp might continue, intending to return to a different county from which he may have come upon the termination of his service, he did not acquire any residence in Hempstead county within the meaning of our election law. If one were a resident of Hempstead county when he became an enrollee, or intended to remain in that county although coming from another county when his service at the camp was completed, he was a resident within the meaning of our election law. One would not

lose his right to vote by enrolling in one of the camps; nor would he acquire this right through that fact alone. Any of these young men otherwise qualified to vote in some other county, might have exercised that right by casting an absentee ballot by complying with the provisions of § 4780 *et seq.,* Pope's Digest. But, in any event, and in any case, he would have the right to vote only in the county of which he was a resident, as one does not acquire a new residence until he has formed the intention of abandoning his old one. Section 65, Chapter on Elections, 18 Am. Jur., p. 223; In re *Sullivan,* 5 Atl. 2d 57, 17 N. J. Misc. 42; *State ex rel. Small* v. *Bosacki,* 154 Wis. 475, 143 N. W. 175; In re *Erickson,* 10 Atl. 2d 142, 18 N. J. Misc. 5.

The judgment will, therefore, be reversed, and the cause remanded for further proceedings in accordance with this opinion. Appellee, the contestee, will, of course, have the right to offer any relevant testimony as to the eligibility to vote of persons whose votes were cast for the contestant.