UNION MOTOR COMPANY *v.* TURBIVILLE.

5-270                                           264 S. W. 2d 592

Opinion delivered February 8, 1954.

*Barber, Henry & Thurman,* for appellant.

*Carl Langston,* for appellee.

Ed. F. McFaddin, Justice. This is an action for damages, brought by the purchaser of an automobile against the seller, for misrepresentation of the car.

In September, 1952, appellee, Mrs. L. H. Turbiville, purchased and received from appellant, Union Motor Company, a 1952 Ford automobile; and the Buyer's Order, signed by the parties, showed the following figures:

The cash price of the Ford and
  equipment was ........................................$2,547.18

Mrs. Turbiville paid by delivering a
  DeSoto car ........................................   724.18
                                                    _____

Leaving due a cash balance of ...................... 1,823.00

To which was added insurance and
  finance charges of ............................   388.36
                                                    _____

Making a total for which she signed
  Conditional Sales Note and
  Contract for ........................................$2,211.36

The note was payable in monthly installments of $92.14.

Union Motor Company (hereinafter called "Union") promptly transferred the Conditional Sales Note and Contract to Kensinger Acceptance Corporation; and Mrs. Turbiville made two of the monthly payments to Kensinger Corporation. She then filed the present damage action against Union [1] for $1,000.00, alleging that Union represented the Ford car to be a new car, whereas in fact it was a wrecked and reconditioned car and worth $1,000.00 less than the contract price. That the Ford car sold Mrs. Turbiville was not a new car, was conceded at the trial, but Union stoutly denied that the car was ever represented to be a new car; and Union also pleaded waiver and estoppel. A jury trial resulted in a verdict

---

[1] Kensinger Acceptance Corporation was also originally made a defendant, but a directed verdict dismissing Kensinger is not contested by Mrs. Turbiville.

and judgment for Mrs. Turbiville for $800.00; and by this appeal Union seeks a reversal.

I. *Refusal Of The Court To Hear Testimony Of The Actual Value Of The DeSoto Car.* Union admitted that in selling Mrs. Turbiville the Ford car at $2,547.18, it allowed her a credit of $724.18 for her DeSoto car. But Union claimed that if the Ford was not a new car and worth $2,547.18, neither was the DeSoto worth $724.18; and Union offered to prove that it actually sold the DeSoto car for only $460.00. Such testimony was refused; and Union claims error, citing *Barham* v. *Standridge,* 201 Ark. 1143, 148 S. W. 2d 648.

The Trial Court was correct in refusing the testimony as to the amount Union received for the DeSoto car. In this case, the pivitol questions were (a) whether Union represented the Ford car to be a new car; and (b) if so, what were Mrs. Turbiville's damages. Union's disposition of the DeSoto car, whether by selling it or giving it away, would throw no light on the pivotal questions. In suing for damages, Mrs. Turbiville, in effect, elected to complete the payments on the Conditional Sales Note and Contract to Kensinger, and to look to Union for damages, which damages are the difference between the contract price of the Ford and its actual value at the time of the sale.[2] The language in *Barham* v. *Standridge, supra,* was not essential to the decision of that case. We hold that what Union received for the DeSoto car is irrelevant to the issues in the case at bar.

II. *Status Of Union.* The complaint alleged that Union Motor Company was a corporation, and this allegation was not specifically denied. In the course of the trial it developed that Union was a partnership, composed of G. H. Kensinger, W. G. Boone, and R. C. Davis. When such fact was disclosed, Union asked for an instructed verdict in its favor, which was denied;

---

[2] The following cases bear on the point: *Logue* v. *Hill,* 218 Ark. 797, 238 S. W. 2d 753; *Williams* v. *Maier,* 213 Ark. 359, 210 S. W. 2d 499; *Sullenberger* v. *O'Lee,* 209 Ark. 798, 192 S. W. 2d 543; *W. C. Nabors Co.* v. *Ball Chevrolet Co.,* 201 Ark. 486, 145 S. W. 2d 25; *Auto Sales Co.* v. *Mays,* 191 Ark. 884, 88 S. W. 2d 330.

and the Court treated the plaintiff's allegations to be amended to conform to the evidence. (See § 27-1160 Ark. Stats.)

The trial court committed no error in this regard. Union had furnished to Mrs. Turbiville a new car guaranty on the Ford; and this guaranty stated that it was "issued by Union Motor Co., Inc., North Little Rock, Arkansas." Thus there was a representation by Union that it was a corporation. When Mrs. Turbiville sued Union and alleged it to be a corporation, there was no specific denial of such allegation. In regard to the form and contents of an answer, § 27-1121 Ark. Stats. says, *inter alia*:

". . . provided that any allegation of the complaint or other pleading setting out the status of any party or parties as a corporation, partnership, firm or individual shall be taken as admitted unless specifically denied."

When Union failed to specifically deny the allegation of its corporate status, and the partners of Union in the course of the trial disclosed their real status, then the Trial Court correctly allowed the allegations of the complaint to be treated as amended to conform to the proof. The original variance did not mislead the defendants to their prejudice. See § 27-1155 Ark. Stats.

III. *Waiver.* Union insists that Mrs. Turbiville made two payments to Kensinger Acceptance Corporation on the Conditional Sales Note and Contract for the purchase of the Ford car *after* she knew that the car was not a new one; and because of such payments, Union insists that it is entitled to an instructed verdict, under such cases as *Pate* v. *McWilliams,* 193 Ark. 620, 101 S. W. 2d 794, and *Kern-Limerick* v. *Mikles,* 217 Ark. 492, 230 S. W. 2d 939.

One reason Union was not entitled to an instructed verdict is because of a conflict in the evidence. Mrs. Turbiville insisted that even when people told her she did not have a new car, she did not believe them, because

she had a written guaranty from Union which described the car as a "new 1952 Ford car";[3] and that when she finally became suspicious of Union, she consulted an attorney and then made no further payments until after this action was filed.[4] So, Mrs. Turbiville's testimony, in effect, denied that she made any payments *after* she knew the car was not a new car; and her testimony denied specifically the testimony of Union's witnesses that Mrs. Turbiville knew all the time that the car was not a new car.

Thus the issue of waiver through payments became a question for the jury; and on that issue the Court instructed the jury:

"If, from a preponderance of the evidence in this case, you should find that after the plaintiff discovered the automobile in question was not a new car, that she knowingly continued making her monthly payments as they fell due, then you are told that this constituted a waiver by the plaintiff of her right to maintain this action, and your verdict should be for the defendant, Union Motor Company."

The foregoing Instruction correctly submitted the waiver issue to the jury on the conflicting testimony; and because of such conflicting testimony, Union was not entitled to an instructed verdict on waiver.[5]

IV. *Amount Of Verdict.* Finally, Union insists that the verdict for $800.00 is excessive; and we find such contention to possess merit. Mrs. Turbiville was entitled to recover the difference between the price she agreed to pay for the Ford if new, and the actual value

---

[3] The guaranty did so describe the car and was introduced in evidence.

[4] A court order of January 29, 1953, provided that payments thereafter made into the registry of the court were without prejudice to the claims of either party.

[5] There *might* be some distinction between the cited cases *supra* (*Pate* v. *McWilliams* and *Kern-Limerick* v. *Mikles*) and the case at bar: because in the cited cases, the payments were made by the purchaser to the seller, whereas in the case at bar, Mrs. Turbiville's note had been transferred before maturity to a third person. Payments on a negotiable note to the third person might not waive the misrepresentations made by the seller. But we bypass this point, as it is not briefed.

of the Ford on the day of the sale. The cash contract price of the Ford was $2,547.18. Mrs. Turbiville's witnesses testified [6] that the Ford was only worth $1,900.00 on the day of the sale. So the maximum damages were $647.18. It is true that the insurance and finance charges [7] added $388.36 to the contract price of $2,547.18; but obviously these items cannot be considered in fixing the cash contract price of the car. So the verdict of $800.00 was excessive by $152.82 (being the difference between $647.18 and $800.00).

If Mrs. Turbiville, within 17 calendar days, enters a remittitur [8] of $152.82, then the judgment will be affirmed for $647.18, and she will be required to pay the costs of this appeal, but will recover the costs of the trial court. Upon failure to enter such remittitur, the entire judgment will be reversed and the cause remanded because of the excessive verdict.

---

[6] At one place one of her witnesses did use the figure of $1,750.00; but an examination of the transcript shows that such witness was referring to another Ford car rather than the one here involved.

[7] There is no claim of usury in this case.

[8] In *Mo. Pac.* v. *Newton*, 205 Ark. 353, 168 S. W. 2d 812, we required a remittitur to prevent a reversal.