BRADLEY *v.* JONES.

5-1234                                                      300 S. W. 2d 1

Opinion delivered March 25, 1957.

*Ivan Williamson* and *Ben B. Williamson,* for appellant.

*N. J. Henley; Fitton & Adams* and *Arnold M. Adams,* for appellee.

CARLETON HARRIS, Chief Justice. Garvin Jones, appellee, and Roy Bradley, appellant, were candidates for the office of County Board Member of Zone 3, Searcy County, Arkansas, in the school election held in said zone on March 17, 1956. Appellant, Bradley, was certified by the election officers, the county judge, and County Election Board of Commissioners, as the winner, the certified returns giving appellant 77 votes and appellee 56. Shortly thereafter, appellee filed his complaint in the Searcy Circuit Court contesting the election and alleging that he received the majority of the votes cast, and had been duly elected to said office. After an extended hearing, the Circuit Court, in a well written memorandum opinion, issued its findings of fact, and subsequent thereto entered its judgment finding that Garvin Jones, appellee herein, was duly elected to the office of County Board of Education, and ousting appellant, Roy Bradley, from office. Appellant filed his *supersedeas* bond, and appeals from the judgment of the trial court.

Eleven points are listed for reversal, but many of these refer to the same alleged error, and can accordingly be passed upon without a full discussion of each point. For instance, the first four deal with whether the Circuit Court had jurisdiction of the parties and the subject matter of said suit.

Appellee filed his suit in the Circuit Court, but instead of having summons issued and served on appellant, served a notice on appellant (as provided in § 3-1205, Ark. Stats. (1947) Anno.) advising that the election was being contested and setting out the grounds upon which appellee relied. Act 366 of 1951 provides that the provisions of § 3-1204 shall be followed in election contests involving county and district school officers. The referred to Section states: "All actions or proceedings for contests as herein mentioned shall be by complaint filed in the Circuit Court as other actions at law * * * ." In *Kirk* v. *Roach,* 226 Ark. 799, 294 S. W. 2d 335, this Court held that the notice previously required to be given under § 3-1205 was no longer the proper method to obtain service on a defendant in an election contest for the county board of education or school director. Proper service could only have been obtained by service of summons, and appellant vigorously argues that since he was not served, he was never in court, and the Circuit Court had no jurisdiction, either of the person of appellant or of the subject matter. We do not agree that the court had no jurisdiction of the subject matter. The Searcy Circuit Court did, and does, have jurisdiction over the school election contests in that county. Act 366 changed the procedure for bringing contestees before the court. The question therefore is whether or not a court which has jurisdiction of the subject matter, can acquire jurisdiction of the parties involved, by their consent.

Appellant filed his answer to the complaint of appellee, admitting some allegations, and specifically denying others. Several motions were filed or made during the hearing by appellant. Throughout all these proceedings, before the trial, during the trial, and at the conclusion thereof, appellant never questioned sufficiency of service. On August 30th, notice of appeal was filed, in which appellant listed his points for reversal; the jurisdiction of the court still was not questioned. Our Court has repeatedly held that the entering of appearance without questioning the sufficiency of the service, amounts to a waiver of this requirement. *Wilson* v.

*Luck,* 201 Ark. 594, 146 S. W. 2d 696; *Mercer* v. *Motor Wheel Corp.,* 178 Ark. 383, 10 S. W. 2d 852; *Auto Sales Co., Inc.* v. *Mays,* 191 Ark. 884, 88 S. W. 2d 330. We therefore conclude that appellant's argument that the court had no jurisdiction is without merit.

It is next urged that no competent testimony was adduced to destroy the verity of the returns. We disagree with this contention, and consider that the testimony was ample to show that the election was improperly conducted, entirely sufficient to justify the court in ordering the ballot boxes opened, and to consider the testimony as to how various voters cast their ballot. The facts, as developed by the testimony, upon which the Circuit Court relied for this action, are set out in its findings and will not be commented upon as we are adopting same in its entirety and incorporating it as a part of this Opinion.

Again, it is urged by appellant that the lower court committed reversible error in ordering the "stub" box to be opened and admitting the stubs as competent evidence, for the reason that the "stub" box was never delivered to the County Treasurer as required by law, but was delivered instead to the County Clerk. We cannot see how appellant was prejudiced. There is no allegation, nor proof, that the ballots were tampered with after being delivered to the Clerk, or that they were in any different condition than when delivered by the election officials. Actually, this "stub" box was placed in the vault of the Leslie State Bank under the orders of the Circuit Court, and no evidence was introduced that would tend to show it had been unlawfully removed from the vault or its contents disturbed. Appellee was not responsible and had nothing to do with delivering the said box to the Clerk rather than the Treasurer, and it would be grossly unfair to withhold his right to an office to which he has been elected because of an error on someone else's part — an error, as previously stated, which resulted in no prejudice whatsoever to appellant.

Appellant argues that the trial court abused its discretion in ordering the original and "stub" ballot

boxes brought into court and opened after appellee had rested his case. Appellant states that appellee never did ask the court to open the ballot boxes; however, the prayer of the Complaint asks that the ballots be impounded and that "the false, fraudulent, and spurious ballots be purged from the election returns." We do not see how such a prayer could be granted unless and until the boxes were opened. At any rate, the court was well within its rights. The sole purpose of the hearing was to determine who had received the majority of legal votes cast, and the court was justified in prolonging the cause, or reopening same, if it felt that there was evidence available which would shed light upon the actual result of the election. *Pulaski County* v. *Horton,* 224 Ark. 864, 276 S. W. 2d 706.

Other errors are alleged, and we have examined each one, but find them to be without merit.

The Findings of the trial court, in which we completely concur, and which we adopt in full as part of this Opinion, are as follows:

"The election contest grows out of the school election held on March 17, 1956, for the election of a member of the County Board of Education of Searcy County from Zone No. 3. The parties hereto were competitive candidates for said office. According to the official poll book 138 votes were cast at said election, while the tally sheets show a total of 133 votes cast for these two candidates. According to the official returns the contestee, Roy Bradley received 77 votes and the contestant, Garvin Jones received 56.

"The poll books and tally sheets properly made out and certified by the election officials and the ballots themselves are the *prima-facie* evidence of the result of the election, but not conclusive. They will stand until they are discredited by satisfactory evidence showing that they have not been preserved in the manner prescribed by law, or have been tampered with or falsified. So, in this case the Court is bound by the official election returns, unless there is substantial evidence sufficient to discredit the returns, in which case the Court may

then. admit oral proof to show the results of the election.

"At the close of contestant's testimony the contestee filed a motion to dismiss the complaint on the ground that contestant had failed to introduce affirmative proof sufficient to destroy the verity of the returns.

"The evidence indicates that during the noon hour on the day of the election the polling booth was closed, and only one of the election officials remained in the polling booth, namely, Manuel Griffin. That during this time one of the candidates, Roy Bradley, appeared at the polling booth and delivered a large brown manila envelope to the said Manuel Griffin, rapping on the door and obtaining admission. There was considerable confusion it seems, in the delivery of the election supplies at this polling place. There is evidence that two of the election officials had some election supplies in their possession the day before the election, while the Sheriff testified that they were delivered on the morning of the election. The evidence indicates that the election officials were strongly partisan in favor of the contestee. This fact is not evidence of fraud within itself, but should be considered along with all other evidence. Also, as mentioned above, there was a discrepancy of 5 votes between the tally sheets and the poll book. The Court thinks that this evidence is sufficient to justify the Court in overruling contestee's motion to dismiss the complaint, and to grant contestant's motion to open the ballot box, and to consider the oral testimony as to how various voters cast their ballot. After hearing the testimony as to the preservation of the ballot box the Court was of the opinion that the integrity of the ballots had been preserved. While the law provides that the stub box should be delivered to and kept by the County Treasurer, while in fact it was delivered to the County Clerk and kept in his custody, yet the testimony shows that the ballot boxes were properly safe-guarded by being placed in the vault of the Bank at Leslie and kept there except on two occasions when they were removed for the Election Commissioners to canvass the returns

and on another occasion, by consent of the attorneys when depositions were being taken. On each occasion they were promptly returned to the bank vault.

"The facts revealed when said ballot box and stub box were opened amply justified the Court's action in opening same. It was found that there were 133 ballots in the box and each ballot was cast for one or the other of these candidates. The ballots gave no appearance of having been changed. The ballots themselves reflected that 76 were cast for Bradley and 57 for Jones. Of the 138 names appearing on the poll book there were 16 for whom there was no corresponding ballot stub bearing their poll number.

"The following ballot stub numbers were found in the ballot stub box, while there was no corresponding ballot in the ballot box: 411, 414, 427, 426, 435, 328, 437, 439, 440, 444, 455, 459, 458, 457, 463, 461, 462, 465, 464, 471, 472, 473, 476, 495, 503, 333, 332, a total of 27.

"Also the following ballots were found in the ballot box with no corresponding ballot stub: 370, 309, 295, 267, 266, 263, 297, 316, 319, 296, 257, 255, 300, 321, 443, 302, 264, 269, 268, 320, 262, 317, 318, 259, 299, 258, 298, a total of 27. Of this number, two — 370 and 309 were cast for Jones, and the other 25 were cast for Bradley. Incidentally, this is the same as the number of stubs found with no corresponding ballots.

"The law provides that the ballot is a writing and cannot be contradicted by parol evidence. But like other writings, it may be shown that it has been changed since it was cast, or that another ballot has been substituted in its place.

"A ballot is a writing or quasi-record and is the best evidence of how a voter cast his ballot. But when the evidence shows the ballot has been tampered with or changed since it was cast, it looses its verity as a writing and oral testimony may be received as to how the vote was cast. The Court is of the opinion that the ballots in this case have lost their verity and the

Court must resort to oral testimony as to how the votes were cast.

"The Court finds that the testimony of Gertha Griffin and Woodrow Loftin, who kept a record outside the polling place as to how various voters cast their ballot, based upon reports from the voters themselves as they came out of the polling booth, is not admissible, as being hearsay testimony. The Court is only considering the testimony of the individual voters themselves as to how they cast their ballot. The testimony indicates that 69 voters cast their ballot for Jones and kept their poll number and ballot number, while 11 voters testified that they voted for Jones but didn't keep either their ballot or poll number, making a total of 80 persons who testified affirmatively that they voted for Jones. Of those voters who testified they voted for Jones and kept their ballot numbers, all of them correspond with the ballot numbers reflected by the ballot stubs, as well as the poll numbers shown on the poll book. The names of all those who testified they voted for Jones appear on the poll book.

"From all of these facts and the law governing the same, the Court must conclude that the contestant, Garvin Jones received 80 of the votes cast at said election, which is a majority thereof, and that he was the duly elected member of the County Board of Education at said election."

Summarizing, we consider it unquestionably established that Jones received the majority of votes cast, and that he was accordingly elected as a member of the County Board of Education, Zone 3, Searcy County, Arkansas.   Affirmed.

Since, because of the filing of the *supersedeas* bond by appellant, Jones has been denied the privilege of serving in the office to which he was elected, the Clerk of this Court is herewith directed to issue immediate mandate.