GREINER MOTOR COMPANY *v.* K. S. SUMPTER
ET UX

5-4547                                                             427 S. W. 2d 8

Opinion delivered April 29, 1968

*Shaw & Bedwell,* for appellant.

*Sam Sexton, Jr.* and *Bill B. Wiggins,* for appellees.

GEORGE ROSE SMITH, Justice. On September 1, 1966, K. S. Sumpter and his wife, the appellees, bought a supposedly new Pontiac Tempest car from the appellant. A number of repairs to the motor and transmission

soon became necessary. Eventually the Sumpters learned that the car had not been a brand-new vehicle when they bought it. They elected to keep the car and bring this action for damages resulting from the seller's misrepresentations. This appeal is from a verdict and judgment awarding the plaintiffs $1,497 in damages.

Greiner contends primarily that it was entitled to a directed verdict, because it insists that the car really was new at the time of the sale. That argument is based upon proof that the Sumpters received a new-car warranty and that title to the vehicle had not been transferred to any other buyer before the sale to the Sumpters. The seller argues that those facts show that the car was actually new, so that its salesmen's statements to that effect were true.

It may be that automobile dealers regard such a vehicle as new, but the jury were entitled to take a more realistic view. Greiner bought the car in December of 1965, more than eight months before the sale to the Sumpters. In that interval the car was used by Greiner both as a rental vehicle and as a demonstrator. Moreover, according to the undisputed proof, the car was stolen and kept by the thief for some six weeks, eventually being recovered in Arizona. The odometer then showed more than 7,000 miles of travel. The seller turned that reading back to about 150 miles, put new tires on the car, cleaned it up in other respects, and represented it to be a new vehicle. In view of that proof it was evidently for the jury to say whether there were fraudulent misrepresentations in the sale.

Secondly, Greiner, citing *Union Motor Co.* v. *Turbiville*, 223 Ark. 92, 264 S. W. 2d 592 (1954), insists that the court should have instructed the jury that the measure of the plaintiffs' damages was the difference between the recited contract price of $2,400 and the actual value of the car at the time of the sale. Instead the court submitted to the jury the measure of damages that

we approved in *Union Motors* v. *Phillips,* 241 Ark. 857, 410 S. W. 2d 747 (1967), being the difference between the market value of the car as warranted and its market value in its condition at the time of the sale.

The *Turbiville* measure of damages has the merit of simplicity, but the rule of the *Phillips* case often achieves complete justice by disregarding the contract price, thereby preserving to the purchaser the advantage he may have gained by driving what would have been a bargain if the car or other chattel had been all that the seller represented it to be. Both rules have been applied in Arkansas. See Casenote, 1 Ark. L. Rev. 308 (1947).

In the case at bar the court properly adopted the *Phillips* standard, because the recited contract price of $2,400 was not the real price paid by the Sumpters, The president of the appellant company testified that he paid $2,647.30 for the car and that the suggested list price was $3,267.63. That list price was noted by the salesman on the Sumpters' invoice, which also recited a cash price of $2,400. The witnesses accounted for the discrepancy by explaining that, as a means of reducing the sales tax due the State, both the recited price of the Pontiac Tempest and the recited credit allowed for the Sumpters' trade-in had been reduced by the seller in the preparation of the contract documents. Hence the court was right, in fairness to the purchasers, in disregarding what was a fictitious contract price and submitting instead a measure of damages based upon actual values.

What we have just said pretty well answers Greiner's third contention, that the verdict is excessive. According to Greiner's own witnesses the car should have been worth more than the $2,647.30 that Greiner paid for it. Mr. Greiner testified that he would have tried to get $2,950 for the car. An expert witness appearing for the buyers fixed the value of the car on the sale date at

between $1,250 and $1,300. Even though the appellant's brief refers to that testimony as "patently unbelievable," we see no reason why the jury were not justified in accepting it—the issue being one of opinion.

Finally, it is argued that the court erred in answering a juror's inquiry about whether it is a criminal offense "to roll back a speedometer." We find no error, not only because the court did not give a positive answer to the question, but also because there was no objection to the court's statement.

Affirmed.