## O'NEAL FORD, INC. *v.* Orlando DAVIE

88-307                                              770 S.W.2d 656

Supreme Court of Arkansas
Opinion delivered May 30, 1989
[Rehearing denied July 3, 1989.]

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by *Christopher O. Parker*, for appellant.

*Rees Law Firm*, by: *David Rees* and *Paul J. Teufel*, for appellee.

DAVID NEWBERN, Justice. This is an appeal from a judgment which was returned against the appellant, O'Neal Ford, Inc. (O'Neal), in a deceit action. The appellee, Orlando Davie, purchased a vehicle from O'Neal after receiving a negative response to his question whether the vehicle had been wrecked. O'Neal personnel knew the car had been wrecked. The jury awarded $4,000 in compensatory damages and $35,000 in punitive damages. The trial court entered a remittitur reducing the punitive damages to $20,000. O'Neal argues that there was no substantial evidence to support the $4,000 award, that the court admitted irrelevant and prejudicial evidence showing the condition of the car shortly after it had been wrecked and declared a total loss by its insurer, and that the case should have been transferred to chancery. Mr. Davie cross-appeals from the remittitur, arguing that the court did not find passion or prejudice on the part of the jury or that the court's conscience was shocked by the $35,000 award. We hold that the evidence was substantial to support the $4,000 award, that the questioned evidence was admissible, that the court was correct in not transferring to chancery, and that the full punitive damages award should be reinstated. Thus, we affirm on appeal and reverse on cross-appeal.

The car was a 1985 Cadillac Fleetwood. It had been owned

by a Ms. Hurdle when it was involved in a frontal collision. Mr. Howell, claims manager for Nationwide Insurance Companies, testified the car had massive damage to the front end and frame and he did not think the car would be rebuilt. Kim Morgan purchased the car from a salvage pool and sold it to Mr. Moxley who took it to Mr. Boatman who described the car as "totaled." Boatman rebuilt the car, and then Moxley sold it to O'Neal. The repair included replacing some three feet of the frame. Mr. Pack, an O'Neal salesman, sold the car to Ms. Norris who kept it a short time and traded it back to O'Neal. Pack testified he knew the car had been wrecked.

Davie testified he asked if the car had been wrecked before he purchased it. The O'Neal salesman with whom he dealt said it had not, although another O'Neal representative told him it had some paint and body damage. Davie ultimately signed a document recognizing that there had been "frame and body work." Although the form he signed had a place to show the dollar amount of the value of the repair work, it was left blank.

### 1. Substantial evidence

Given Davie's testimony that he was told the car had not been wrecked and the admitted knowledge on the part of Pack that the car had been wrecked, we find substantial evidence of misrepresentation. The primary thrust of O'Neal's first point, however, is that the *amount* of the compensatory award is not supported by substantial evidence.

Davie presented the expert testimony of Mr. Bourland that the value of a wrecked and rebuilt vehicle like the one in question was $10,000. He testified that if the car had been "without damage" it would have been worth $15,000 to $15,500. He testified if the car had not been wrecked and rebuilt but had had only paint and body work, it would have been worth $13,000. His ultimate testimony thus was that the difference between the value of the car as represented and its actual value was $3,000, although he said on cross-examination that "[i]f Nathan Pack paid $11,500 for the car that is what it was worth."

We find there was substantial evidence to support the $4,000 award, given Bourland's opinion that the car was worth $10,000 and the fact that O'Neal's price for the car to Davie was

$13,995. Perhaps the better rule of damages in a misrepresentation case is the difference between the actual value of the chattel and its value had it been as represented. We said that in *Greiner Motor Co.* v. *Sumpter*, 244 Ark. 736, 427 S.W.2d 8 (1968). We recognized, however, that we had also approved a measure of damages constituted of the difference between the actual value of the chattel and the contract price, citing *Union Motor Co.* v. *Turbiville*, 223 Ark. 92, 264 S.W.2d 592 (1954), and Note, 1 *Ark. L. Rev.* 308 (1947). The latter was obviously the basis of the jury award in this case, and there was substantial evidence to support it, given Bourland's initial opinion of the value of the car and the evidence showing the extent of the damage to the car before it was repaired.

## 2. Wreck evidence

The trial court was asked to preclude the introduction of evidence about the condition of the car before it was rebuilt on the ground that the O'Neal personnel had no idea how badly it had been wrecked. The judge refused to permit Davie to present evidence about personal injuries suffered by Ms. Hurdle in the collision, but did permit pictures of the wrecked car to be introduced.

Davie had the burden of proving his damages resulting from the misrepresentation. *Storthz* v. *Commercial Nat'l Bank*, 276 Ark. 10, 631 S.W.2d 613 (1982). The evidence in question tended to prove the car was one which had been wrecked and that the damage was so severe it had to be "rebuilt." Davie's expert witness, Bourland, gave a figure as the value of a "rebuilt" car as opposed to one which merely had paint and body damage. Whether the car in question was a rebuilt wreck or one with only paint and body work, as Davie was told, thus was an issue. The evidence was relevant to that issue, and as mentioned above, to the value of the car when Davie purchased it

## 3. Transfer to chancery

O'Neal argues it was error for the court not to grant its motion to transfer to chancery. The motion was made on the basis that Davie had signed a contract acknowledging that O'Neal sold the car "as is" with no warranty, and that by contending O'Neal had a duty beyond the contract Davie was seeking reformation of

the contract which is an equitable remedy.

O'Neal cites *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972), in which we noted that evidence of fraud as a basis for reformation of a solemn instrument must be clear and convincing. There, the odometer on the vehicle sold by the dealer had been rolled back. We wrote that the contract in that case by which the plaintiff purchased the vehicle contained an acknowledgment by him that there were no warranties and thus the standard of proof of misrepresentation was preponderance of the evidence, rather than the reformation standard.

O'Neal argues that in this case there was a statement in the contract about damage to the vehicle which controls this tort action. We cannot agree. Although Davie was told there was paint and body work on the car, and although he signed a statement acknowledging paint and frame work in an unspecified amount, that does not refute his statement that he was also told the car had not been wrecked. While we can imagine how paint and body work or even frame work might be required because of a manufacturing defect or might otherwise become necessary on a car which had not been involved in a collision, we need not speculate. It is enough to point out that the writing did not address the question whether the car had been wrecked, and thus, as in the *Ray Dodge* case, we do not apply the reformation or clear and convincing standard here, and we can think of no reason for transferring this case to the chancery court.

## 4. Cross-appeal

In the course of rulings that the punitive damages should be reduced, the trial judge remarked that he was not shocked by the amount but was mildly surprised. In *W.M. Bashlin* v. *Smith*, 277 Ark. 406, 643 S.W.2d 246 (1982), it was held that the standard for determining whether a damages verdict is excessive is "whether it shocks the conscience of the court or demonstrates that jurors were motivated by passion or prejudice." There the damages award was compensatory. We applied the same standard with respect to punitive damages in *Morrison* v. *Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981), where we reversed the trial judge's conditional remittitur.

In the *Morrison* case, as in the case before us now, there

50

was no finding that the jury was either controlled by passion or prejudice or that the award was so great that it shocked the conscience of the court. We made it clear that "[a] belief by a trial court that damages are excessive is not, standing alone, a sufficient ground for ordering a reduction. If that was the standard, the great discretion of the jury would be abrogated." 274 Ark. at 364-365, 625 S.W.2d at 455.

Affirmed on appeal, reversed on cross-appeal.